**FLINTKOTE COMPANY,**
Plaintiff–Appellant,

v.

**UNITED STATES of America,**
Defendant–Appellee.

No. 91–16618.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted March 11, 1993.

Decided Oct. 18, 1993.

Norman W. Goldin and Joseph A. Rieser, Jr., Reed Smith Shaw & McClay, Washington, DC, James P. Kleier, Morrison & Foerster, San Francisco, CA, for plaintiff-appellant.

Teresa E. McLaughlin, Tax Div., Dept. of Justice, Washington, DC, for defendant-appellee.

Before: NORRIS, HALL and FERNANDEZ, Circuit Judges.

## OPINION

CYNTHIA HOLCOMB HALL, Circuit Judge:

The Flintkote Company ("Flintkote") appeals from the district court's judgment in favor of the government following cross-motions for summary judgment in this action for refund of federal income taxes plus interest paid by Flintkote for the years 1970–73. Flintkote contests the Internal Revenue Service's ("IRS") partial disallowance of Flintkote's deduction of $3.5 million paid to settle a large number of civil antitrust treble damage actions. The parties to this action dispute whether, within the meaning of 26 U.S.C. § 162(g), the civil suits involved the same violation as was charged in a subsequent criminal indictment against Flintkote.

The district court had jurisdiction under 28 U.S.C. § 1346(a)(1), and this court has jurisdiction of this timely appeal under 28 U.S.C. § 1291. We affirm.

## I.

In 1973, Flintkote agreed to settle a large number of civil antitrust treble damage actions brought in the late 1960s against it and other manufacturers of gypsum wallboard. Flintkote paid $3.5 million as its share of the settlement payment, and then deducted that amount from its federal income taxes as a business expense. Relying on 26 U.S.C. § 162(g), the IRS disallowed $ 2,013,809 of that deduction. The disallowance was based on the fact that a month after the civil settlement became final, a grand jury in Pennsylvania handed down a criminal indictment against Flintkote which raised factual allegations essentially identical to those in the civil complaints. Flintkote pled nolo contendere to the indictment. In this action, Flintkote contests the disallowance.

This case requires us to interpret section 162(g), which provides that a taxpayer who is convicted of a criminal antitrust violation (or who pleads guilty or nolo contendere to an indictment charging such) may not deduct two-thirds of any civil antitrust damages or settlement monies paid on account of "such violation or any related violation." [1] This provision is an exception to the general rule that damages or settlement payments are deductible as business expenses.

## II.

We review the district court's grant of summary judgment de novo. *Maisano v. U.S.*, 908 F.2d 408, 409 (9th Cir.1990). Summary judgment is appropriate where there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. *Id.*

---

1. The actual text of section 162(g) relevant to this action provides:

   If in a criminal proceeding a taxpayer is convicted of a violation of the antitrust laws, or his plea of guilty or nolo contendere to an indictment or information charging such a violation is entered or accepted in such a proceeding, no deduction shall be allowed under subsection (a) for two-thirds of any amount paid or incurred—

   . . . . .

   (2) in settlement of any action brought under [section 4 of the Clayton Act] on account of such violation or related violation.

26 U.S.C. § 162(g).

Only two reported cases interpret section 162(g); neither answers the question presented in this appeal. *See Federal Paper Board Co., Inc. v. Commissioner of Internal Revenue*, 90 T.C. 1011, 1988 WL 46843 (1988), and *Fisher Companies, Inc. v. Commissioner of Internal Revenue*, 84 T.C. 1319, 1985 WL 15365 (1985), aff'd mem., 806 F.2d 263 (9th Cir.1986).

## III.

The question we consider is whether the IRS properly disallowed under section 162(g) Flintkote's deduction for money paid to settle civil antitrust actions on the ground that the settlement concerned the same violation to which Flintkote pled nolo contendere in a criminal antitrust action.[2]

Flintkote advances two principal arguments to support its assertion that the civil antitrust actions and the criminal indictment did not concern the same violations. Flintkote first contends that because the statute of limitations for criminal antitrust actions is five years,[3] Flintkote's conviction on the criminal indictment only concerned conduct within the five-year period preceding the 1973 return of the indictment. Thus, for purposes of calculating the disallowance, the settlement payment, which released Flintkote of liability for alleged conspiratorial conduct lasting from the late 1950s until 1973, should be apportioned between the five-year statutory period (1968–1973) and the years prior to that.[4] Flintkote asks this court to hold that a deduction should be allowed for the portion of the settlement payment attributable to the prior years. Essentially, Flintkote argues that because it was not criminally liable for conduct beyond the five-year statutory period, it was not convicted of any

violation occurring in the years before 1968, and thus the pre-1968 violations on which the civil settlement was based were not the *same* as any criminal violation.

Flintkote's second argument is that because the civil suits alleged violations of several separate antitrust laws, including section 1 of the Sherman Act, and the criminal indictment charged only a violation of section 1, a portion of the settlement payment should be allocated to violations other than of section 1 and a deduction permitted for that portion. In other words, Flintkote asserts that section 162(g) should not apply to the portion of the settlement payment attributable to violations of statutory provisions not alleged in the criminal indictment.

### A. Were the violations not the same because they involved different time periods?

■ The district court found that the indictment charged misconduct occurring during the same time period as that alleged in the civil cases. The court found further that by pleading nolo contendere to the indictment, Flintkote admitted every essential element of the offense pleaded in the indictment, including the allegation that the conspiracy extended back to the early 1960s.[5]

2. Section 162(g) permits disallowance on settlement monies paid on either the same *or* related violations. A "related" violation within the meaning of this section is governed by Treasury Regulation 1.162–22(c) (stating that a violation of the Federal antitrust laws is related to a subsequent violation if 1) with respect to the subsequent violation the United States obtains both a judgment in a criminal proceeding and an injunction against the taxpayer, and 2) the taxpayer's actions which constituted the prior violation would have contravened such injunction if such injunction were applicable at the time of the prior violation). Under this specific definition, both parties agree that the settlement clearly arose out of violations that were *not* "related" to the violation charged against Flintkote in the subsequent criminal indictment. Thus, the question presented is whether the settlement was on account of the same violation—i.e. "such violation"—as that charged in the criminal indictment.

3. 18 *U.S.C.* § 3282, which applies here, provides: "Except as otherwise expressly provided by law, no person shall be prosecuted, tried, or punished for any offense, not capital, unless the

indictment is found or the information is instituted within five years next after such offense shall have been committed."

4. In Flintkote's opening brief, it argued that the settlement only covered conduct continuing up until 1968, and that the time periods covered by the criminal indictment and by the civil settlement were therefore completely distinct. In Flintkote's reply brief, however, it acknowledged in a footnote that "pursuant to the settlement agreement, the antitrust plaintiffs released all claims they had against Flintkote up to July 11, 1973, the date of that agreement." Flintkote conceded that section 162(g) thus applies to the settlement payment *to the extent that it is attributable to violations within the five-year period preceding the indictment. The question remains, however, whether the indictment actually covered the entire alleged conspiracy or just conduct from 1968 to 1973.

5. Specifically, the indictment stated in the section titled "Offense Charged" that the antitrust conspiracy occurred "[b]eginning sometime prior to 1960 and continuing thereafter at least until

Noting that the criminal antitrust laws have a five-year limitations period, the court concluded that Flintkote's present troubles are traceable to its own mistake in failing to limit the scope of its nolo contendere plea to its post–1968 activities. The court found that Flintkote had "ample opportunity, in 1973, to consider the tax consequences of its plea and adjust its plea accordingly," but instead chose not to contest the allegations in the indictment. The district court held that by not raising the affirmative defense of statute of limitations when entering its plea, Flintkote waived that defense for future proceedings.

The district court correctly determined that the violations alleged in the civil suits and charged in the criminal indictment were the same, but erred in focussing on the question of waiver in reaching that result. Flintkote is not arguing after the fact that prosecution was barred by the statute of limitations—that is, Flintkote is not trying to raise in this action a limitations defense to the form of indictment or the conviction. Moreover, as discussed below, Flintkote never had a statute of limitations defense to begin with, thus no affirmative defense existed for it to raise or waive at the plea hearing. The question here is not whether Flintkote can now limit its conviction by invoking the statute of limitations. Rather, Flintkote raises the question of what the scope of its conviction was in the first place. We can answer this question without considering waiver doctrine.

■ Flintkote argues that by pleading nolo contendere it only admitted allegations of conduct within the five years preceding the return of the indictment, because under the statute of limitations that is the only time period for which it could possibly have been criminally liable. *See United States v. Heller,* 579 F.2d 990, 998 (6th Cir.1978) (by plea of nolo contendere appellant admitted every essential element of the offense well pleaded

in indictment). Flintkote's argument fails because the conspiracy to which it admitted by its plea was a *continuing* conspiracy (co-extensive in time with the conspiracy alleged in the civil actions),[6] and therefore the five-year statutory period did not commence until the conspiracy's *end.*

■ As long as *some* part of the conspiracy continued into the five-year period preceding the indictment, the statute of limitations did not insulate Flintkote from criminal liability for actions taken more than 5 years prior to the time of indictment. *See United States v. Dynalectric Co.,* 859 F.2d 1559, 1563–65 (11th Cir.1988), *cert. denied,* 490 U.S. 1006, 109 S.Ct. 1641, 104 L.Ed.2d 157 (1989); *United States v. United States Gypsum Co.,* 600 F.2d 414, 417–18 (3d Cir.), *cert. denied,* 444 U.S. 884, 100 S.Ct. 175, 62 L.Ed.2d 114 (1979); *United States v. Walker,* 653 F.2d 1343, 1347 (9th Cir.1981), *cert. denied,* 455 U.S. 908, 102 S.Ct. 1253, 71 L.Ed.2d 446 (1982); *United States v. Inryco, Inc.,* 642 F.2d 290, 293 (9th Cir.1981), *cert. dismissed,* 454 U.S. 1167, 102 S.Ct. 1045, 71 L.Ed.2d 324 (1982). In other words, although the statute limits how much time the government has to indict an alleged violator once a conspiracy is complete, it does not limit the temporal scope of a conspiracy for which a violator is liable. *See United States v. All Star Industries,* 962 F.2d 465, 476–77 (5th Cir.) (statute of limitations does not limit antitrust defendants' liability for restitution to losses occurring within five years preceding indictment; defendants ordered to pay restitution for losses from entire conspiracy), *cert. denied,* —— U.S. ——, 113 S.Ct. 377, 121 L.Ed.2d 288 (1992).

Because Flintkote pled nolo contendere to a single, continuing conspiracy which occurred during a time period co-extensive with the conspiracy alleged in the civil suits, we conclude that the civil and criminal actions

---

sometime in 1973." In the section titled "Jurisdiction and Venue" the indictment stated that the "aforesaid combination and conspiracy was carried out ... within five years next preceding the return of this indictment."

6. As the government points out, the Supreme Court held in *United States v. Kissel,* 218 U.S. 601, 607–08, 31 S.Ct. 124, 125–26, 54 L.Ed. 1168 (1910), that a conspiracy in violation of the Sherman Act is a single event that has "continuance in time," and is not a "cinematographic series of

against Flintkote concerned the same antitrust violation.

### B. Were the violations not the same because they involved different antitrust laws?

■■ Flintkote asserts that the civil suits alleged violations of several separate, distinguishable antitrust provisions,[7] while the criminal indictment only charged a violation of section 1 of the Sherman Act. Flintkote accurately notes that offenses under section 1 and section 2 of the Sherman Act are legally distinct even though they may overlap. *See American Tobacco Co. v. United States*, 328 U.S. 781, 788, 66 S.Ct. 1125, 1128, 90 L.Ed. 1575 (1946) (section 1 and section 2 are separate statutory offenses and "require proof of conspiracies which are reciprocally distinguishable from and independent of each other although the objects of the conspiracies may partially overlap"); *United States v. Socony–Vacuum Oil Co.*, 310 U.S. 150, 226 n. 59, 60 S.Ct. 811, 846 n. 59, 84 L.Ed. 1129 (1940) ("the crime under § 1 is legally distinct from that under § 2 . . . though the two sections overlap in the sense that a monopoly under § 2 is a species of restraint of trade under § 1"). The government argues in response that though the various antitrust laws are separately punishable, they overlap significantly, and conduct that violates section 1 of the Sherman Act can violate other provisions as well.

Because the civil suits alleged separate violations of the antitrust laws, Flintkote's argument that section 162(g) should be applied only to the portion of the settlement payment attributable to a violation of section 1 of the Sherman Act has some surface appeal. However, Flintkote has not suggested any method by which the settlement payment could be apportioned. Flintkote cites *Federal Paper Board*, 90 T.C. at 1011, 1988 WL 46843, for the proposition that the settlement payment should be allocated among the various alleged statutory violations, but the differences between that case and this one

highlight the problem inherent in Flintkote's position.

In *Federal Paper Board*, the company was indicted for antitrust violations involving price-fixing in the market for folding cartons, and settled civil litigation in which it was alleged to have conspired to fix prices of both folding cartons and milk cartons. The Tax Court determined that the violation giving rise to the criminal action was not the same in all material respects as that giving rise to the civil actions. The court therefore allocated the company's settlement payment between milk carton claims and folding carton claims, based on the aggregate sales by all the settling defendants to the settling plaintiffs in the civil class action. The court held that section 162(g) applied only to the portion of the payment allocable to the folding carton claims.

In the circumstances of *Federal Paper Board*, the antitrust harms to the folding carton and milk carton markets were distinct, and by comparing sales and purchases in each market, the court could readily ascertain an actual proportion to use in allocating the settlement payment. Federal Paper Board's misconduct in each of the different product markets was, in effect, different misconduct, even though the civil plaintiffs alleged a single conspiracy. In Flintkote's situation, however, the same conduct affecting a single product market was alleged to violate different statutes. Though the civil plaintiffs alleged separate offenses, they suffered a single antitrust harm. Thus, we see no practical method of tracing the amount of the settlement payment attributable to each alleged offense. Moreover, the various claims in the civil case were, essentially, different ways of characterizing the results of a single set of core activities in which the conspirators engaged. We see no legal justification for allocating the damages even if an allocation could somehow be approximated.

We conclude that even though the civil actions alleged violations of antitrust laws in addition to section 1 of the Sherman Act,

---

distinct conspiracies." *Id.* at 607, 31 S.Ct. at 125.

**7.** Flintkote states that "[a]lthough the civil complaints claimed a violation of section 1 of the Sherman Act, many of them also alleged claims

of monopolization and attempts to monopolize in violation of section 2 of the Sherman Act, restrictive dealing arrangements in violation of section 3 of the Clayton Act, and price discrimination in violation of the Robinson–Patman Act."

those actions alleged a single conspiracy arising from a single set of facts—the same conspiracy and facts which formed the basis of the criminal indictment. Flintkote has presented no basis for determining that the civil actions and criminal indictment involved different violations.

## IV.

We hold that the IRS properly disallowed Flintkote's deduction for money paid to settle civil antitrust actions on the ground that the settlement concerned the same violation to which Flintkote pled nolo contendere in a criminal antitrust action. The violations alleged in the civil suits and charged in the criminal indictment resulted from the same continuing conspiracy, and therefore did not involve different time periods. In addition, the civil and criminal violations were the same because both involved section 1 of the Sherman Act, and because the additional statutory offenses alleged in the civil actions are not practicably separable from the section 1 offense.

**AFFIRMED.**