UNITED STATES of America,
Plaintiff–Appellee, Cross–
Appellant,

v.

Fred FUCHS and Roy D. Reagan,
Defendants–Appellants,
Cross–Appellees.

Nos. 98–10173, 98–10174, 98–10214

United States Court of Appeals,
Ninth Circuit.

Argued June 14, 1999

Submitted July 2, 1999

Submission Vacated Dec. 22, 1999

Resubmitted June 26, 2000

Filed July 6, 2000

Richard A. Friedman, Assistant United States Attorney, Washington, D.C., for the plaintiff-appellee/cross-appellant.

Gerald Cunningham and Richard D. Biggs, Atlanta, Georgia, for the defendants-appellants/cross-appellees.

Before: T.G. NELSON, HAWKINS and GRABER, Circuit Judges.

Opinion by Judge T.G. Nelson; Dissent by Judge Graber

**T.G. NELSON, Circuit Judge:**

Fred Albano Fuchs and Roy Reagan appeal their convictions and sentences for conspiring to commit offenses against the laws of the United States. We have jurisdiction pursuant to 28 U.S.C. § 1291 and reverse.

## I.

The United States Forest Service has traditionally relied on contracting with private parties to provide airtanker services for fighting forest fires. In the 1980s, the airtanker fleet consisted of C–119 twin engine, propeller-driven aircraft obtained from the military. After several crashes of C–119s due to structural defects, the C–119 fleet was grounded in 1987. Because the available airtanker fleet was substantially diminished, the Forest Service needed to obtain additional aircraft for use in firefighting operations.

In December 1987, Lawrence Amicarella, Director of Fire and Aviation Management for the Forest Service, directed defendant Fred Albano Fuchs, Deputy Director of Fire and Aviation, to send a letter to the Department of Defense ("DOD"), requesting that it cooperate with civilian contractors in obtaining military aircraft that could be converted to airtankers. Defendant Roy Reagan was a private aircraft broker representing Hemet Valley Flying Service ("Hemet Valley"), which was one of the companies that contracted with the Forest Service to provide airtankers. At a meeting on December 23, 1987, attended by both Fuchs and Reagan, the Air Force was presented with the idea of transferring Air Force C–130As to the Air Force Museum and then exchanging the C–130As with Hemet Valley's grounded C–119s. However, at a subsequent meeting with representatives of the Air Force Museum, Air Force officials reacted negatively to the idea of conducting such an exchange.

Fuchs and Reagan later met with Mr. Duda of the General Services Administration ("GSA") who introduced them to his assistant, Mr. Albee. Apparently, Albee suggested that exchanges be conducted without going through the Air Force Museum and instead have the Forest Service become directly involved. The Air Force would declare that the aircraft were excess property and transfer the aircraft to GSA, thereby making the aircraft available to other government agencies. Apparently, Albee stated that the government agencies that received excess aircraft were required to retain ownership of the aircraft.

Fuchs was given responsibility for coordinating the Forest Service's exchange program. He did some research into the regulations and also obtained copies of exchange agreements that Reagan had used in previous transfers involving the military. Fuchs did not discuss the exchange program with the Forest Service Office of General Counsel. Each exchange agreement was prepared by Fuchs, who presented them to Amicarella who signed for the Forest Service. Fuchs signed as a witness.

Although the exchange agreements contained language stating that the exchange was made under authority of 41 C.F.R. § 101–46.203, the exchanges were not authorized by that regulation because the items being exchanged were not "historical items" as defined by 41 C.F.R. § 101–46.001–4, and the C–130As and P–3s that were part of the program were obtained by the Forest Service solely for the purpose of exchange, a violation of 41 C.F.R. § 101–46.202(b)(6).

The exchange agreements did not contain a bill of sale. Instead, Fuchs provided separate bills of sale to the contractors who were acquiring the C–130s and P–3s, thereby transferring title from the Government to the contractors in violation of the regulations. At trial, Fuchs admitted that he told his superiors that the transfer of ownership of the aircraft to the airtanker contractors had been approved by GSA

when, in fact, GSA had not approved such transfers. Neither the Air Force personnel nor the GSA personnel involved with the exchange program were aware that ownership of the aircraft was being transferred to the contractors. Rather, they assumed that the Forest Service was retaining ownership of the aircraft.

Reagan received commissions from those contractors whom he assisted in acquiring updated aircraft. The commissions came in the form of title to four C–130s, which Reagan subsequently sold. Fuchs received flight time in the C–130s and P–3s, which he testified would cost from $2,000 to $3,000 an hour in the civilian world, but indicated that he believed the flight time was conducted for business purposes as part of his position with the Fire and Aviation Division of the Forest Service.

The exchange program was terminated in January 1990 after the Assistant General Counsel of the U.S. Department of Agriculture ("USDA") reviewed the program and concluded that the Forest Service did not have authority to conduct the exchange program. More than six years later, on June 25, 1996, a grand jury indicted Fuchs and Reagan, charging the two men with one count of conspiring to commit offenses against the laws of the United States, a violation of 18 U.S.C. § 371, and one count of converting United States property to the use of another, a violation of 18 U.S.C. § 641.

Prior to trial, the defendants moved to dismiss on the basis of the statute of limitations. The district court denied that motion and stated, "[t]he Court will closely monitor the relevant conduct and will deal with this motion if it has merit at the time of a Rule 29 Motion." At trial, however, the defendants did not request a statute of limitations jury instruction, and none was given.

After five weeks of trial and fifty hours of deliberation, the jury returned a verdict of guilty as to both defendants on the conspiracy count and not guilty as to the conversion count. Fuchs was sentenced to twenty-four months of imprisonment and three years of supervised release. Reagan was sentenced to thirty months of imprisonment and three years of supervised release.

## II.

The indictment was returned on June 25, 1996. The five-year general statute of limitations for noncapital offenses, see 18 U.S.C. § 3282, which applies to the conspiracy count, was tolled for 143 days from January 2, 1996, to May 24, 1996, while the Government sought information from the government of France. Therefore, the Government was required to show that the conspiracy continued until at least February 3, 1991, in order for the indictment to fall within the statute of limitations.

▮▮▮ Reagan contends that Supreme Court precedent requires us to set aside the jury's general verdict because only some of the overt acts alleged in the indictment could have occurred within the applicable statute of limitations, see Appendix to the Opinion, and the jury could have convicted on a legally inadequate ground. We agree.

First, we note that this defect in the indictment could have been cured simply by instructing the jury that it had to find that an overt act in furtherance of the conspiracy occurred within the statute of limitations. Here, however, there was no such instruction. Although defendants moved to dismiss the indictment on the ground that the statute of limitations had expired, neither defendant proposed a jury instruction regarding the statute of limitations, nor objected to the absence of such an instruction. The defendants therefore failed to object properly to the district court's jury instructions.

▮▮▮ "Where a defendant fails properly to object to a jury instruction or to an omission from a jury instruction, we review for plain error." *United States v.*

*Klinger,* 128 F.3d 705, 710 (9th Cir.1997). A trial court commits plain error when (1) there is error, (2) that is plain, and (3) the error affects substantial rights. *See Johnson v. United States,* 520 U.S. 461, 467, 117 S.Ct. 1544, 137 L.Ed.2d 718 (1997). We may exercise our discretion to notice such error, but only if the error seriously affects the fairness, integrity, or public reputation of judicial proceedings. *See id.*

■ The Supreme Court has held that when a general verdict may be based on a legally inadequate ground, such as because of a statutory time bar, the verdict should be set aside. *See Yates v. United States,* 354 U.S. 298, 312, 77 S.Ct. 1064, 1 L.Ed.2d 1356 (1957) *overruled on other grounds, Burks v. United States,* 437 U.S. 1, 98 S.Ct. 2141, 57 L.Ed.2d 1 (1978).[1] This is because:

> Jurors are not generally equipped to determine whether a particular theory of conviction submitted to them is contrary to law—whether, for example, the action in question ... is time barred.... When, therefore, jurors have been left the option of relying upon a legally inadequate theory, there is no reason to think that their own intelligence and expertise will save them from that error.

*Griffin v. United States,* 502 U.S. 46, 59, 112 S.Ct. 466, 116 L.Ed.2d 371 (1991). Since the trial court did not instruct the jury it must find that an overt act in furtherance of the conspiracy had occurred after February 3, 1991, the jury could have based its general verdict on acts alleged in the indictment that occurred outside the limitations period. Therefore, the district court erred when it failed to provide a statute of limitations instruction to the jury.

Second, the error was plain. Error is plain when it is "clear and obvious." *See United States v. Burt,* 143 F.3d 1215, 1218–19 (9th Cir.1998) (reversing conviction for clear error on basis of erroneous entrapment instruction). Considering that a statute of limitations instruction is clearly required under established Supreme Court law and that the defendants had previously moved to dismiss the indictment because of statute of limitations and prosecutorial delay, the trial court's error was plain.

■ Third, the error affected substantial rights of the defendants. An error prejudices the substantial rights of a defendant when it "affect[s] the outcome of the proceedings." *United States v. Baron,* 94 F.3d 1312, 1318 (9th Cir.1996) (quoting *People v. Cruz,* 70 F.3d 1090, 1092 n. 2 (9th Cir.1995)). Our jurisprudence concerning convictions for engaging in a continuing criminal enterprise ("CCE"), in violation of 21 U.S.C. § 848, informs our inquiry and supports our conclusion that the defendants were prejudiced by the court's failure to properly instruct the jury. In order to establish that a defendant is guilty of operating a CCE as defined by § 848(c), the Government must show that he engaged in a continuing series of violations of federal narcotics law. *See United States v. Jerome,* 942 F.2d 1328, 1330 (9th Cir.1991); *see also* 21 U.S.C. § 848(c). The Government must establish two elements: (1) that the "continuing series of violations were

---

1. The dissent contends that the Supreme Court's decision in *Yates* is inapplicable here. To the contrary, we believe that it directly controls. In *Yates,* the Supreme Court found that the court's jury instructions improperly included an invalid object of the conspiracy. 354 U.S. at 311–12, 77 S.Ct. 1064. The overt acts that were charged in the conspiracy could have just as readily supported a valid ground as an invalid ground. *See id.* Because it was impossible to discern which overt acts the jury relied upon in their convic-

tion, the Supreme Court reversed. It stated, "[i]n these circumstances we think the proper rule to be applied is that which requires a verdict to be set aside in cases where the verdict is supportable on one ground, but not on another, and it is impossible to tell which ground the jury selected." *Id.* at 312, 77 S.Ct. 1064. Similarly, here it is impossible to discern whether valid or invalid overt acts were relied upon by the jury in convicting the defendants. Therefore, *Yates* dictates that the conviction be set aside.

undertaken in concert with five or more other persons with respect to whom [the defendant] occupies a position of organizer, a supervisory position, or any other position of management"; and (2) that the defendant obtained substantial income or resources from the continuing series of violations. *Jerome,* 942 F.2d at 1330 (internal quotations omitted); 21 U.S.C. § 848(c)(2)(A)-(B).

In *Jerome,* the Government presented the jury with a number of people from whom the prosecution told them they could properly count in making the five-person calculation. 942 F.2d at 1331. Some of those individuals were improperly included because they were not organized, supervised or managed within the meaning of § 848(c)(2)(A). *Id.* We therefore held that in such cases, the district court "must give the jurors a specific unanimity instruction-that is the jurors had to be instructed that they must unanimously agree as to the identity of each of the five people [the defendant] organized, managed or supervised." *Id.*

We reasoned that the district court's failure to issue such an instruction "was highly prejudicial, with a *high probability of substantially affecting* the jury verdict." *Id.* (emphasis added). Despite the defendant's failure to object to the jury instructions, we held that the district court's failure to issue the unanimity instruction constituted plain error, and thus we reversed the CCE conviction. *Id.*

The instant case presents a strikingly similar scenario. Of the ten overt acts alleged in the indictment, the acts that most strongly support a finding of conspiracy fell outside the statute of limitations. Just as the jury in *Jerome* could have found the defendant guilty based on individuals improperly included as being supervised or managed by the defendant, the jury here could have found Fuchs and Reagan guilty based on acts improperly included as part of the conspiracy because they were barred by the statute of limitations. The district court's failure to in-

struct was just as "highly prejudicial" here as it was in *Jerome.*

Since there was "plain error," we may exercise our discretion and reverse the defendants' convictions if permitting the convictions to stand would result in a miscarriage of justice. *See United States v. Olano,* 507 U.S. 725, 736, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993). In *Johnson,* the Supreme Court held that it would be improper for a court of appeals to exercise its discretion to correct plain error where the evidence against the defendant on the issue erroneously explained to the jury was "overwhelming." *Johnson,* 520 U.S. at 470, 117 S.Ct. 1544. There, in a perjury prosecution, the trial court had failed to instruct the jury that it must find the perjured statement was material to the grand jury investigation. Materiality was virtually uncontroverted, however, and Johnson could not present a plausible argument that her false statement was not material. *See id.* Thus, given that the evidence supporting materiality was "overwhelming," the Court found no basis to conclude that the error "seriously affect[ed] the fairness, integrity or public reputation of judicial proceedings." *Id.* at 469, 117 S.Ct. 1544.

Here, on the other hand, the evidence was not "overwhelming." While there was enough evidence to support the verdict, the entire record also supports an inference that the defendants, particularly Fuchs, were not involved in an effort to defraud the Government, but were perhaps careless in dotting the administrative "i's" they encountered. Allowing defendants' convictions to stand, given the likelihood that the jury may not have convicted had they been properly instructed, would be a "miscarriage of justice." *Cf. United States v. Shortman,* 91 F.3d 80, 82 (9th Cir.1996) (reversing conviction for plain error where trial court failed to properly instruct jury on gross negligence). We therefore reverse the defendants' convictions.

### III.

Because we reverse, we address the following claims of error in the event that there should be a retrial.

### A. *Prosecutorial Misconduct*

Fuchs contends that the indictment was invalid because of prosecutorial misconduct in the grand jury proceedings. He alleges that the Government investigator intentionally testified falsely as to Fuchs' conduct and role in the exchange program. The investigator testified that Fuchs had signed the exchange agreements on behalf of the Forest Service when he had actually signed as a witness. This inaccuracy was continued when the investigator presented time line charts that also indicated that Fuchs had signed for the Forest Service. Additionally, the investigator did not fully explain the timing of Fuchs' retention of an attorney.

■ The district court's determination of whether alleged prosecutorial misconduct before the grand jury requires dismissal of an indictment is reviewed *de novo*. *United States v. De Rosa*, 783 F.2d 1401, 1404 (9th Cir.1986). "Dismissal of an indictment is considered a 'drastic step' and is generally disfavored as a remedy." *Guam v. Muna*, 999 F.2d 397, 399 (9th Cir.1993) (quoting *United States v. Rogers*, 751 F.2d 1074, 1076 (9th Cir.1985)).

■ Fuchs provided no evidence to show that the prosecutor encouraged the investigator to testify in the manner he did or that the prosecutor acted in any intentional way to mislead the grand jury. Any inaccuracy that resulted from the investigator's statement that Fuchs signed for the Forest Service, rather than as a witness, was rendered harmless when the grand jury was presented with the exchange agreements themselves. The investigator's statement that Fuchs was "giving" the aircraft to the contractors was not perjurious because the context in which that term was used indicates that the investigator meant "giving" to mean transferring in one instance and exchange in barter in the other instance. Finally, Fuchs' contention that the prosecution was required to fully explain the circumstances surrounding Fuchs' hiring of an attorney is meritless because the Government has no obligation to present evidence to the grand jury that is favorable to the accused. *See United States v. Williams*, 504 U.S. 36, 50–56, 112 S.Ct. 1735, 118 L.Ed.2d 352 (1992).

### B. *Evidentiary Rulings*

#### 1. *Evidence of Benefit to the Government.*

■ Fuchs and Reagan also appeal certain evidentiary rulings by the district court. The district court's evidentiary rulings during trial are reviewed for abuse of discretion. *See United States v. Senchenko*, 133 F.3d 1153, 1158 (9th Cir.1998).

■ Defendants sought to present evidence that the Government received a continuing benefit from the transfer of the aircraft because the planes were being used to put out forest fires. The district court did not allow defendants to present this evidence ruling that the evidence was not relevant to the issue of whether the transfers were fraudulent at the time they occurred. When the district judge stated that the issue was whether the transfers were fraudulent and not whether there was a continuing benefit, Fuchs' attorney agreed with the judge. The defendants were free to present evidence showing that the Government received a benefit at the time the transfers occurred, but did not do so. The district court did not abuse its discretion in determining that the issue of a continuing benefit to the Government was irrelevant and therefore inadmissible.

#### 2. *Reagan's Tax Returns.*

Reagan argues that the district court improperly admitted his tax returns that showed that he did not report as income over $400,000 he earned from selling two C–130As, which he received as a commis-

sion for arranging the transfer of aircraft to one of the private contractors. He argues the income did not need to be reported because it fell within a like exchange exception. However, there was some testimony from Reagan's tax preparer that the income should have been reported.

■ Under Federal Rule of Evidence 404(b), evidence of other acts may be admissible to prove, among other things, motive, opportunity, intent, or knowledge. In order for other act evidence to be admissible, (1) the evidence must tend to prove a material issue in the case, (2) the acts must be similar to the offense charged, (3) proof of the other acts must be based upon sufficient evidence, and (4) the acts must not be too remote in time. *See United States v. Montgomery,* 150 F.3d 983, 1000 (9th Cir.1998).

■ The Government presented the tax return evidence to show that Reagan had knowledge that the exchange program was unlawful. When used to prove knowledge, "the prior act need not be similar to the charged act as long as the prior act was one which would tend to make the existence of the defendant's knowledge more probable than it would be without the evidence." *United States v. Ramirez-Jiminez,* 967 F.2d 1321, 1326 (9th Cir. 1992). Proof that Reagan attempted to hide income that he received as a result of the exchange program could reasonably indicate that he knew the program was unlawful. The testimony of Reagan's tax preparer provides sufficient evidence to show that the other act occurred. Finally, the alleged attempt to hide the income was not too remote in time from the object of the conspiracy, thus satisfying the time requirement for admissibility.

### 3. *Audit Report.*

■ The district court admitted an audit report of the exchange program prepared by USDA–OIG under the business records exception to the rule against hearsay, Fed.R.Evid. 803(6). The district court has wide discretion to determine whether a business record meets the trustworthiness standard of the business records exception to the rule against hearsay. *See United States v. Scholl,* 166 F.3d 964, 978 (9th Cir.1999). Although contested by the defendants, the record reflects that the audit report was made in the regular course of USDA–OIG's regular activity and that it was the regular practice of USDA–OIG to prepare such a report.

The record indicates that USDA–OIG prepares audit reports, such as the one admitted at trial, whenever it suspects irregularities in a USDA program. The witness who presented the report was the individual in charge of the preparation of the report. There is nothing in the record to indicate the report lacks trustworthiness. The district court did not abuse its discretion when it admitted the audit report.

### C. *Instruction on Ownership of Aircraft*

■ The defendants contend that the district court erred in instructing the jury that transfer of ownership of an airplane occurs when a valid bill of sale is signed by the previous owner and possession is taken by the new owner. We review the district court's formulation of jury instructions for abuse of discretion. *See United States v. Houser,* 130 F.3d 867, 869 n. 1 (9th Cir. 1997).

■ At trial, an attorney for the USDA, who was experienced with the Forest Service's transfer of aircraft, testified that to transfer title to an aircraft, a bill of sale must be executed. The defendants did not present any evidence to rebut this testimony. Furthermore, in *Pacific Harbor Capital, Inc. v. USDA,* 845 F.Supp. 1 (D.D.C.1993), the USDA claimed title to two of the C–130s that had been transferred under one of the exchange agreements written by Fuchs. The court granted Pacific Harbor summary judgment because it could trace its title through bills of sale commencing with those that had been executed by Fuchs.

The bills of sale were held to be conclusive evidence that a legitimate transfer of ownership of the airplanes occurred. *See id.* at 4. Therefore, the district court did not err in instructing the jury concerning the transfer of ownership of an airplane.

REVERSED.

## APPENDIX TO THE OPINION

The following is a summary of the overt acts that were listed in the grand jury indictment:

(a) Between on or about December 1987 and August 1989, defendant Fuchs made numerous misrepresentations regarding the manner in which government owned C–130A and P–3A aircraft were going to be provided to private airtanker operators by the Forest Service.

(b) Between on or about October 14, 1988, and August 23, 1990, defendants Reagan and Fuchs made numerous misrepresentations to a U.S. Air Force Lieutenant Colonel regarding the employment status of defendant Reagan and the ultimate disposition of C–130A aircraft which were in the process of being transferred from the Air Force to the Forest Service.

(c) On or about June 29, 1989, defendant Fuchs faxed to defendant Reagan a copy of a letter from Fuchs to a third party that stated that Reagan would be representing the U.S. Forest Service in order to inspect six P–3A aircraft belonging to the Navy prior to the transfer of those aircraft from the Navy to the Forest Service.

(d) On or about July 4, 1990, defendant Fuchs "received and accepted approximately three hours of flight time in a P–3A aircraft originally exchanged from the Forest Service to [an] airtanker operator."

(e) Between on or about April 3 and April 5, 1991, defendant Fuchs "received and accepted approximately 5.5 hours of flight time in a C–130A aircraft originally exchanged from the Forest Service to [an] airtanker operator."

(f) On or about January 17, 1991, defendant Fuchs mailed a letter, which was signed by a third person, to defendant Reagan which indicated that the Forest Service was processing an exchange of aircraft between Reagan and the Forest Service.

(g) Between on or about May 24, 1988, and February 4, 1991, defendants Reagan and Fuchs arranged for the transfer of twenty-eight C–130A and P–3A aircraft from the Air Force and the Navy to the Forest Service. These aircraft were later transferred to five airtanker operators in exchange for alleged historic aircraft.

(h) On or about July 24, 1992, defendant Fuchs altered an exchange agreement between the Forest Service and an airtanker operator by entering the serial numbers of three C–130A aircraft that had been exchanged with the airtanker operator three years earlier but had not been indicated on the face of the agreement, and substituting the serial number of a P–2V that had been accepted by Fuchs for the exchange of a C–130A aircraft.

(i) On or about September 30, 1992, defendant Reagan mailed a letter to the Chief of the U.S. Forest Service, requesting delivery of a C–130A aircraft from the Forest Service pursuant to an agreement between Reagan and the Forest Service.

(j) Between on or about April 3, 1989, and February 4, 1991, defendants Reagan and Fuchs "did knowingly and intentionally embezzle, steal, purloin, and convert to their own use or the use of another, property of the United States."

GRABER, Circuit Judge, dissenting:

I respectfully dissent. The majority opinion raises an issue that no party raised at any level of these proceedings and then decides that issue incorrectly. The majority opinion misapprehends this circuit's law on the requirements for a conspiracy indictment; discovers "plain error" where there was none; creates but does not acknowledge a split with two of our sister circuits; inappropriately extends Supreme Court precedent; improperly analyzes whether the asserted error was prejudicial; and places an intolerable and unwarranted burden on this circuit's district courts.

## BACKGROUND

Each Defendant was charged with one count of conspiracy and one count of converting government property. The single count of conspiracy alleged five object offenses: conversion of government property, false statements to federal agencies, mail fraud, wire fraud, and bribery of a public official. As to each of those objects, the government alleged overt acts that occurred within the applicable five-year statute of limitations, see 18 U.S.C. § 3282, and overt acts that occurred outside that five-year period. The government was required to prove beyond a reasonable doubt that Defendants had engaged in at least one overt act in furtherance of the conspiracy during the limitation period, as it had alleged.

The case proceeded to trial. The government presented evidence concerning the overt acts alleged in the indictment and other overt acts not alleged in the indictment. The parties submitted jury instructions and agreed on a set of instructions. The district court gave those agreed upon instructions. Among other things, the district court instructed the jurors that they were required to find that Defendants had committed at least one overt act in furtherance of the conspiracy and that they were required to agree about which particular overt act, or acts, Defendants had committed. The court did not, however, instruct the jurors that they had to agree that Defendants had engaged in an overt act that took place within the limitation period. Defendants did not request such an instruction, nor did either Defendant object to the district court's failure to give such an instruction.

The jury convicted Defendants. The verdict form did not specify which overt act, or acts, the jury had found. Accordingly, it is not clear whether the jurors agreed that Defendants had committed *all* the alleged overt acts, *some* of them, or *one* of them. Further, if the jurors did not agree that Defendants had committed *all* the alleged acts, it is not clear which specific acts they found, so it is not clear whether the jurors found that Defendants had committed overt acts within the limitation period. On this record, there simply is no way to tell.

Defendants appealed. After the case was submitted, the panel sua sponte invited supplemental briefing on several questions that were not raised at any stage of the proceedings. Those questions were subparts of a larger question, also not raised: Did the district court commit plain error by failing to *instruct the jury* that it had to find that Defendants had committed an overt act in furtherance of the conspiracy *during the limitation period*, even though no party had requested such an instruction?

In their supplemental briefs, both Defendants asserted—albeit for different reasons—that the district court had plainly erred in failing to so instruct the jury. The majority agrees, for reasons somewhat different than those presented in Defendants' supplemental briefs, and concludes that the district court's failure to give the unrequested instruction works a "miscarriage of justice" that requires reversal of Defendants' convictions. Maj. op. at 963. I disagree.

## THE INDICTMENT WAS PROPER

The majority opinion refers to the indictment's inclusion of overt acts both within and without the limitation period as a "defect" that the district court could have and should have "cured." Maj. op. at 961. The majority opinion also states that the overt acts that fell outside the limitation period were "improperly included as part of the conspiracy because they were barred by the statute of limitations." Maj. op. at 963. Those statements reveal the majority opinion's misunderstanding of this circuit's law concerning conspiracy indictments, a misunderstanding that may have colored the remainder of its analysis.

The inclusion in the indictment of overt acts that fell outside the limitation period did not render the indictment "defective." As long as some part of the conspiracy continued into the five-year period preceding the indictment, the indictment could reach acts that took place outside the limitation period. See *Flintkote Co. v. United States*, 7 F.3d 870, 873 (9th Cir.1993); *see also, e.g., United States v. Walker*, 653 F.2d 1343, 1346 (9th Cir.1981) (to the same effect); *United States v. Inryco, Inc.*, 642 F.2d 290, 294 (9th Cir.1981) (to the same effect). The indictment charged a continuing conspiracy that bridged the statute of limitations and alleged overt acts within the limitation period with respect to each of the object offenses. Under *Flintkote*, the indictment was entirely proper and did not need to be "cured," even though it also alleged overt acts that occurred outside the limitation period.

## THE DISTRICT COURT'S FAILURE TO INSTRUCT WAS NOT PLAIN ERROR

Because Defendants did not request a statute-of-limitations instruction or object to its omission, we review for plain error under Rule 52(b). For a holding of plain error to be proper: (1) there must be error; (2) the error must be plain; and (3) the defendant must demonstrate that the asserted error affected his or her substan-

tial rights. See *United States v. Olano*, 507 U.S. 725, 732–35, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993); *United States v. Perez*, 116 F.3d 840, 846 (9th Cir.1997) (en banc). An appellate court's power to correct plain error "is to be used sparingly." *United States v. Frady*, 456 U.S. 152, 163 n. 14, 102 S.Ct. 1584, 71 L.Ed.2d 816 (1982). In the realm of jury instructions, "[i]t is the rare case in which an improper instruction will justify reversal of a criminal conviction when no objection has been made in the trial court"; further, "[a]n omission, or an incomplete instruction, is less likely to be prejudicial" than an improper instruction and, accordingly, is even less likely to justify reversal. *Henderson v. Kibbe*, 431 U.S. 145, 154–55, 97 S.Ct. 1730, 52 L.Ed.2d 203 (1977).

Assuming for the sake of argument that the trial court erred in failing to instruct on the statute of limitations, the error was not plain. Error is "plain" when it is "clear" or "obvious" under current law. *Olano*, 507 U.S. at 734, 113 S.Ct. 1770. The error here, if any, was neither clear nor obvious.

In some circumstances, a district court can commit plain error by failing to give a jury instruction that neither party requested. In *United States v. Mendoza*, 11 F.3d 126, 128 (9th Cir.1993), this court concluded that the district court's failure to instruct the jury on *an element* of a criminal offense was plain error. The *Mendoza* court's analysis focused on the fact that the omitted instruction went to an element of the offense. See *id.* Noting that the prosecution bears the burden of proving every element of a crime, the court concluded that, "when a trial judge omits an element of the offense charged from the jury instructions, it deprives the jury of its fact-finding duty and violates the defendant's due process rights." *Id.; see also Perez*, 116 F.3d at 846–47 (concluding that a district court's failure to instruct the jury on an element of the charged offense was plain error); *United States v. Jerome*, 942

F.2d 1328, 1331 (9th Cir.1991) (holding that a district court committed plain error by failing to give a unanimity instruction on an element of the charged offense).

This is not a case in which a district court failed to instruct the jury as to an element of an offense. The five-year statute of limitations contained in 18 U.S.C. § 3282 is "not jurisdictional and [can] be waived by a defendant." *United States v. Caldwell,* 859 F.2d 805, 805 (9th Cir.1988); *see also United States v. Akmakjian,* 647 F.2d 12, 14 (9th Cir.1981). "Because the statute of limitations is an affirmative defense that must be raised by [the defendant], failure to assert it at trial usually results in waiver of the defense." *United States v. Manning,* 56 F.3d 1188, 1195 (9th Cir.1995).

Thus, this instruction pertains to a *waivable affirmative defense,* not to an element of the offense. Defendants did argue in the district court, in their motions to dismiss and Rule 29 motions, that the statute of limitations barred their prosecution (although for different reasons than the majority presents). But they did not make such an argument to the jury or in any way inform the district court, during their long discussions of the form and content of the jury instructions, that they wanted the court to give a statute-of-limitations instruction. The government suggests that Defendants' failure to request such an instruction was a deliberate tactical choice based on the particular evidence that was submitted at trial. Whether or not that is true, it is clear that the district court had no reason to anticipate that this instruction was necessary or even appropriate. It was not requested; it did not pertain directly to any of Defendants' statute-of-limitations arguments; and Defendants might have chosen deliberately not to ask for it.

The considerations that require district courts in *all* cases to instruct on the *elements* of charged offenses do not apply in this case. By definition, the elements of the charged offense are at issue in every

criminal prosecution. Defendants cannot waive them; district courts cannot relieve the government of its burden of proving them. It requires no special judgment or intuition on the part of a district court to know that it must instruct on all elements of an offense, whether or not a defendant asks it to. The requirement is clear and obvious.

Not so with affirmative defenses. Defendants may waive them, or raise them only in pretrial motions, or raise but then abandon them. Defendants may have good reasons—tactical reasons—for not raising a particular defense, or for not wanting a jury instruction on that defense. It is not clear or obvious that a jury instruction on the statute-of-limitations defense is required, or even appropriate, in every criminal case. Therefore, it makes sense that a defendant should alert a district court that such an instruction is called for. The best way to do so is by requesting such an instruction or by objecting to its omission. But, at a minimum, a defendant should have to do something more than Defendants did in this case before a district court is required to instruct about a particular affirmative defense.

### THE MAJORITY OPINION CONFLICTS WITH CASES FROM TWO OTHER CIRCUITS

Two other circuit courts have addressed the question of plain error in the context of omitted jury instructions, under circumstances remarkably similar to these. Neither court has found plain error.

In *United States v. Matzkin,* 14 F.3d 1014 (4th Cir.1994), the defendant was convicted of one count of conspiracy to defraud the government. The government alleged that the defendant had committed 26 overt acts in furtherance of the conspiracy, 10 of which fell *within* the five-year statute of limitations created by 18 U.S.C. § 3282, and 16 of which fell *outside* that limitation period. *See id.* at 1017. As in this case, the defendant did not request an

instruction stating that the jury was required to find at least one overt act within the limitation period, and the district court did not give such an instruction. The defendant did not object to that omission. *See id.*

On appeal, the defendant argued that the district court's failure to give such an instruction sua sponte was plain error that required reversal. In rejecting that argument, the circuit court stated that "[a] finding of plain error when a court failed to sua sponte include an instruction relating to an affirmative defense would place an unnecessary and intolerable burden upon the trial court." *Id.* at 1018. The court observed that, "[i]f the present case involved but one alleged overt act, and there had been a serious conflict in the evidence as to whether such act was within the statutory time frame, the defendant's argument would have more substance." *Id.* However, as is the case here, the government had alleged numerous overt acts that occurred within the limitation period, and had introduced evidence to prove those acts. *See id.* In the circumstances, the circuit court concluded that "a statute of limitations defense would not be obvious to the trial judge or put the court on notice that it should give the jury instruction absent a request from counsel." *Id.*

The Sixth Circuit reached the same result in *United States v. Hook,* 781 F.2d 1166 (6th Cir.1986). In that case, the defendant was convicted on various charges arising from his failure to pay income tax. *See id.* at 1169. On appeal, he argued that he might have been convicted solely on the basis of evidence that fell outside the statute of limitations, because the jury was not instructed that it was required to find that he wilfully failed to pay taxes within the limitation period. *See id.* at 1172. The defendant had not requested a statute-of-limitations instruction. *See id.*

The Sixth Circuit declined to find plain error. *See id.* at 1173. The court noted that "the trial court's alleged error was an act of omission, not commission; the lower court did not misstate the law or direct the jury to convict [the defendant] even if it found the crimes to have been completed before the limitations period." *Id.* The court then concluded that "[t]he omission of statute of limitations instructions merely created a situation in which the jury could have convicted [the defendant] while finding that the crimes occurred [outside the limitation period], a possibility we find too speculative to require reversal based on plain error." *Id.*

Thus, two circuit courts, confronted with the very issue that we face in this case, have declined to find plain error. Of course, we are not bound by those cases. Nevertheless it is instructive, at least, that two circuit courts, considering this question under circumstances remarkably similar to those in this case, have declined to require unrequested instructions on the statute-of-limitations defense.

## THE MAJORITY OPINION'S RESULT IS NOT DICTATED BY *YATES*

The majority opinion's analysis of plain error consists of the following: "Considering that a statute of limitations instruction is clearly required under established Supreme Court law and that the defendants had previously moved to dismiss the indictment because of statute of limitations and prosecutorial delay, the trial court's error was plain." Maj. op. at 962. It is clear from the majority opinion's earlier discussion that the "established Supreme Court law" that, in its view, "clearly required" this instruction is the Court's decision in *Yates v. United States,* 354 U.S. 298, 77 S.Ct. 1064, 1 L.Ed.2d 1356 (1957). But *Yates* does not "clearly require" an instruction in this case.

In *Yates* the defendants were charged with a single count of conspiracy "(1) to advocate and teach the duty and necessity of overthrowing the Government of the United States by force and violence, and (2) to organize, as the Communist Party of the United States, a society of persons who

so advocate and teach." *Id.* at 300, 77 S.Ct. 1064. The jury convicted the defendants without indicating which of the two object offenses it had agreed upon.

The Supreme Court overturned the conspiracy convictions. *See id.* at 312, 77 S.Ct. 1064. The Court concluded that one of the object offenses—organizing the Communist Party—occurred wholly outside the applicable three-year statute of limitations, because the Communist Party was "organized" in 1945, while the indictment was not returned until 1951. Therefore, one of the two object offenses was wholly time-barred and, because the jury returned a general guilty verdict, there was no way to be sure that the jury had not relied on that legally untenable object offense. *See id.* The Court concluded:

> In these circumstances we think the proper rule to be applied is that which requires a verdict to be set aside in cases where the verdict is supportable on one ground, but not on another, and it is impossible to tell which ground the jury selected.

*Id.*

This case is not *Yates.* Here, none of the *object offenses* with which Defendants were charged was time-barred; as to *each object offense*, the government has alleged *overt acts within the limitation period.* In *Yates,* one of the object crimes was legally untenable on the face of the indictment, yet the jury might have convicted solely based on that untenable object. *See id.* Here, by contrast, all the object offenses properly were indicted and properly were before the jury; unlike *Yates,* this is not a case "where the verdict is supportable on one ground, but not on another." *Id.*

Rather, the difficulty on which the majority opinion focuses is that the jury might have convicted solely on the basis of an overt act that fell outside the limitation period, even though none of the objects charged in the indictment was untenable as a matter of law. Our question is whether that possibility requires reversal. That is not the *Yates* question.

The Supreme Court discussed *Yates* at length in *Griffin v. United States,* 502 U.S. 46, 51–60, 112 S.Ct. 466, 116 L.Ed.2d 371 (1991). In *Griffin,* the defendants were indicted on one count of conspiracy to commit two object crimes. *See id.* at 47, 112 S.Ct. 466. The jury convicted them of conspiracy and returned a general verdict that did not specify which object crime the jury had found. *See id.* at 48, 112 S.Ct. 466. On appeal, the defendants argued— and the government conceded—that there was insufficient evidence to convict them of one of the object crimes. On that basis, the defendants argued that the general verdict could not stand, because the government had failed to prove one of the object crimes, and there was no way to be sure that the jury had not relied on that object in convicting the defendants. *See id.*

The Court rejected the defendants' arguments. *See id.* at 60, 112 S.Ct. 466. In so doing, the Court concluded that the jury was "well equipped to analyze the evidence" and could be assumed to have convicted based on the object crime that the government had proved, rather than on the other, "factually inadequate" object crime. *Id.* at 59, 112 S.Ct. 466. The Court further concluded that *Yates* did not control; rather, the Court made clear that *Yates* applies when "a particular theory of conviction ... contrary to law" is presented to a jury and the jurors "have been left the option of relying upon a legally inadequate theory." *Id.*

Neither *Yates* nor *Griffin* is exactly on point. The majority opinion extends *Yates* and argues that it governs this case, an extension that may be inappropriate under *Griffin.*[1] But I need not argue that *Grif-*

---

1. The Fifth Circuit, citing *Griffin,* rejected a similar but not identical attempt to extend *Yates* in a case involving a conspiracy conviction and allegedly time-barred object offenses. *See United States v. Mann,* 161 F.3d 840, 857 (5th Cir.1998).

*fin* controls here, or insist that *Yates* never could be extended as far as the majority extends it. For purposes of plain-error analysis, it is enough to conclude that the majority's result is not clear or obvious under *Yates, Griffin,* or any other authority cited in the majority opinion. Accordingly, the district court could not have committed plain error by failing to arrive at that result on its own. *See, e.g., Olano,* 507 U.S. at 734, 113 S.Ct. 1770 (stating that error is "plain" only if it is "clear" or "obvious" under current law). To hold, as the majority opinion does, that the district court plainly erred by (1) failing to extrapolate this questionable result from *Yates* and *Griffin,* and (2) failing to give an unrequested jury instruction on a waivable affirmative defense based on that extrapolation, is to place an extraordinary and inappropriate burden on this circuit's district courts.

## DEFENDANTS HAVE NOT MET THEIR BURDEN OF SHOWING PREJUDICE

Under Rule 52(b), an appellate court may correct plain error only if that error "affects substantial rights." The inquiry into whether an asserted error has affected a defendant's substantial rights is similar to a "harmless error" inquiry, but with one important distinction: In plain-error cases, it is the defendant, not the govern-ment, that bears the burden of persuasion. *See Olano,* 507 U.S. at 734, 113 S.Ct. 1770.

"In most cases," the substantial-rights requirement "means that the error must have been prejudicial: It must have affected the outcome of the district court proceedings." [2] *Id.* To satisfy their burden, Defendants were required to make a "specific showing of prejudice." *Id.* at 735, 113 S.Ct. 1770; *see also Perez,* 116 F.3d at 847. In cases like this one, *"a court of appeals cannot correct the forfeited error unless the defendant shows that the error was prejudicial."* *Olano,* 507 U.S. at 734, 113 S.Ct. 1770 (emphasis added).

Here, Defendants have not made a "specific showing of prejudice." The majority states that, "[o]f the ten overt acts alleged in the indictment, the acts that most strongly support a finding of conspiracy fell outside the statute of limitations." Maj. op. at 963. Accordingly, the majority opinion concludes, "the jury *could have* found [Defendants] guilty based on acts" that were "barred by the statute of limitations." *Id.* (emphasis added).

It is not legally sufficient to conclude that the jury "could have" decided on that basis. We are reviewing for plain error, not for harmless error; Defendants bear the burden of showing prejudice. Unless we conclude that the district court's error "affected the outcome of the district court proceedings"—not that it "could have" affected the outcome—we "cannot correct

---

2. The *Olano* court stated that a specific showing of prejudice was required "[i]n most cases," but declined to decide whether a showing of prejudice *always* was required. 507 U.S. at 734–35, 113 S.Ct. 1770. *Olano* suggests that there are three classes of "substantial rights" cases under Rule 52(b): "normal" cases, in which a defendant must make a specific showing of prejudice; cases in which prejudice is presumed; and cases in which the error is of such magnitude that it affects substantial rights regardless of prejudice. *See id.* at 735–37, 113 S.Ct. 1770.

The majority opinion correctly treats this as the "normal" case, in which prejudice must be shown. Maj. op. at 962–63. This court has concluded that the *Olano* court's statements "suggest that there may be some cases,

such as those involving the violation of certain constitutional rights, in which prejudice may not have to be shown." *United States v. Perez,* 116 F.3d 840, 847 (9th Cir.1997) (en banc). However, the *Perez* court went on to conclude that the district court's error in that case—failing to instruct the jury on an *element* of a criminal offense—was not a "presumptively prejudicial" error. *Id.* The court also concluded that the error was not the sort of "structural error" that necessarily affected substantial rights. *Id.* at 847 n. 11. Those conclusions control here; if failure to instruct on an *element* of a criminal offense is not presumptively prejudicial and does not automatically affect substantial rights, then failure to instruct on an *affirmative defense* assuredly does not satisfy those standards.

the forfeited error." *Olano*, 507 U.S. at 734, 113 S.Ct. 1770.

The majority opinion cites *Jerome* as support for its finding of prejudice. Maj. op. at 962–63. *Jerome* is inapposite. In that case, this court held that the district court had committed plain error by failing sua sponte to instruct the jury that it must agree unanimously on which five persons acted in concert with the defendant in his continuing criminal enterprise. *See Jerome*, 942 F.2d at 1331. The requirement that a defendant act in concert with five or more persons *is an element of a "continuing criminal enterprise."* *See United States v. Garcia*, 988 F.2d 965, 967 (9th Cir.1993).

As I have explained, a district court must instruct on the *elements* of a criminal offense even if the defendant does not ask it to. In *Jerome*, the district court failed to instruct on all elements; that was plain error. But here, the district court appropriately instructed on all the elements of the charged offense and, unlike in *Jerome*, gave unanimity instructions. What the district court did not do was instruct sua sponte on the waivable statute-of-limitations defense. *Jerome* does not establish—or even suggest—that such an omission is prejudicial.

It also is worth noting that the majority opinion's analysis of prejudice addresses only the overt acts that were alleged in the indictment. At trial, the government alleged—and produced evidence to prove—a number of additional overt acts, not alleged in the indictment, many of which occurred within the limitation period. The government was entitled to do so; a conspiracy conviction may rest on overt acts not alleged in the indictment. *See Brulay v. United States*, 383 F.2d 345, 350–51 (9th Cir.1967). In concluding that the overt acts that "most strongly support a finding of conspiracy" occurred outside the limitation period, maj. op. at 963, the majority opinion simply ignores evidence—letters, records of telephone calls, sales agreements, and the like—that the government offered at trial to prove other, timely overt acts that were not alleged in the indictment.

## CONCLUSION

For the foregoing reasons, I respectfully dissent from Part II of the majority's opinion. I concur in Part III of the opinion. Accordingly, I would affirm Defendants' convictions.