**UNITED STATES of America, Plaintiff,**

v.

**YASITH CHHUN, Defendants.**

**No. CR05–00519 (A) DDP.**

United States District Court, C.D. California.

Sept. 18, 2007.

Brian D. Hershman, Lamar W. Baker, AUSA–Office of U.S. Attorney, Los Angeles, CA, Richard Young Lee, AUSA–Office of U.S. Attorney, Santa Ana, CA, for Plaintiff.

## ORDER DENYING DEFENDANT CHHUN'S MOTION FOR ORDER DISMISSING COUNTS TWO AND THREE OF THE FIRST SUPERSEDING INDICTMENT ON THE GROUND THAT THE UNITED STATES WAS NOT "AT PEACE" WITH CAMBODIA

DEAN D. PREGERSON, District Judge.

This matter comes before the Court on Defendant Chhun's Motion to Dismiss Counts Two and Three of the First Superseding Indictment on the Ground That the United States was not "At Peace" With Cambodia. After reviewing the papers submitted by the parties, the Court denies the motion.

### I. BACKGROUND

The indictment for the following charges arises from Defendant Chhun's alleged involvement in the failed coup attempt against the Cambodian government on November 24, 2000. Count Two of the First Superseding Indictment charges Defendant Chhun under 18 U.S.C. § 956(b) with conspiracy to damage or destroy property in a foreign country with which the United States is "at peace." Count Three of the First Superseding Indictment charges Defendant Chhun with a violation of 18 U.S.C § 960 for conspiracy to take part in a military expedition against a foreign state with which the United States is "at peace." Defendant argues that Counts Two and Three should be dismissed because the United States was not "at peace" with Cambodia at the time of the alleged conduct as a matter of law. The Government opposes dismissal arguing that the United States being "at peace" with Cambodia is an element of the crime that must be decided by a jury. Further, both parties offer competing interpretations of the meaning of the "at peace" requirement

under 18 U.S.C. § 956(b) and 18 U.S.C. § 960.

## II. DISCUSSION

### A. *Legal Standard*

A motion to dismiss an indictment may properly be considered in pretrial under Federal Rule of Criminal Procedure 12. Fed.R.Crim.P. 12. A Rule 12 motion to dismiss allows three categories of defenses, objections, and requests to be raised before trial: (1) the failure of the indictment or information to show subject matter jurisdiction or to state an offense; (2) the five mandatory pretrial matters enumerated in Rule 12(b), including defenses based on defects in the institution of the prosecution and defenses based on defects in the indictment; and (3) all other matters that are capable of determination without the trial of the general issue. *United States v. Smith,* 866 F.2d 1092, 1095 (9th Cir.1989).

### A. *Analysis*

### 1. *Is the "At Peace" Requirement a Question of Law or Fact?*

■ The first question raised by the motion is whether the "at peace" requirement is a question of law to be decided by the Court or a question of fact to be decided by a jury. In addressing a pretrial motion, a court generally may decide questions of law rather than fact. *United States v. Shortt Accountancy Corp.,* 785 F.2d 1448, 1452 (9th Cir.1986). The essential elements of a crime are issues of fact that must be submitted to a jury and proved beyond a reasonable doubt. *United States v. Gaudin,* 515 U.S. 506, 511, 115 S.Ct. 2310, 132 L.Ed.2d 444 (1995) ("The Constitution gives a criminal defendant the right to demand that a jury find him guilty of all the elements of the crime with which

he is charged ...."); *see also In re Winship,* 397 U.S. 358, 364, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970). When there is a mixed question of law and fact, these questions have "typically been resolved by juries." *Gaudin,* 515 U.S. at 512, 115 S.Ct. 2310.

■ Both parties concede that whether the United States was "at peace" with Cambodia is an element of the conspiracy offenses provided for by 18 U.S.C. § 956(b) and 18 U.S.C. § 960 and must be proven by the Government beyond a reasonable doubt. (See Def.'s Mot. 2 and Gov.'s Mot. 4, 7.) Nevertheless, relying on *United States v. Terrell,* 731 F.Supp. 473 (S.D.Fla.1989), one of the few recent cases to address the "at peace" requirement, Defendant Chhun maintains that the Court may decide that the United States was not "at peace" with Cambodia as a matter of law. (Def.'s Mot. 2–4.)

In *Terrell,* the defendants were charged with conspiracy under 18 U.S.C. § 960 for their conduct in relation to the CIA's covert military operations with the Contras against the Sandinista government in Nicaragua. *Terrell,* 731 F.Supp. at 474. As this was a 18 U.S.C. § 960 prosecution, the "at peace" element was at issue. The court noted that it had previously determined that whether the United States was "at peace" with Nicaragua was "a question of law."[1] The court then proceeded to define the legal standard for proof of the "at peace" requirement. *Id.* at 475–476. After reviewing the evidence of covert operations by the Contras against the Nicaraguan government funded primarily by the CIA, the court held that the United States was not "at peace" during the time relevant to the indictments, and dismissed all

1. As mentioned by Defendant Chhun, this previous determination likely did not result in an

opinion as it cannot be found on Lexis or PACER. (Def.'s Mot. 3.)

counts that included the "at peace" requirement. *Id.* at 477.

The Court finds the *Terrell* opinion's determination that the "at peace" requirement is a question of law to be in conflict with the weight of authority establishing that essential elements of a crime are questions of fact for a jury. *See, e.g., Gaudin,* 515 U.S. at 511–12, 115 S.Ct. 2310. A jury must ultimately decide whether the prosecution has carried its burden of proving beyond a reasonable doubt all essential elements of the 18 U.S.C. § 956(b) and 18 U.S.C. § 960 conspiracy charges, including whether the United States was "at peace" with Cambodia. Even where the "at peace" requirement is construed as a mixed question of law and fact, it is the jury that will apply a legal standard to the facts. *See id.* at 512, 115 S.Ct. 2310.

Although a question of fact for the jury, the Court must articulate the legal standard to be applied in evaluating proof of the "at peace" requirement. On this legal question, the *Terrell* case remains relevant. The Court now turns to defining the legal standard for the "at peace" requirement.

### 2. The Meaning of "At Peace" Under 18 U.S.C. § 956(b) and 18 U.S.C § 960

In addressing the meaning of the words "in time of peace" from Article 92 of the Articles of War, Justice Douglas has stated:

> We deal with a term that must be construed in light of the precise facts of each case and the impact of the particular statute involved. Congress in draft-

ing laws may decide that the Nation may be "at war" for one purpose, and "at peace" for another. It may use the same words broadly in one context, narrowly in another. The problem of judicial interpretation is to determine whether "in the sense of this law" peace had arrived. Only mischief can result if those terms are given one meaning regardless of the statutory context.

*Lee v. Madigan,* 358 U.S. 228, 230–31, 79 S.Ct. 276, 3 L.Ed.2d 260 (1959) (internal citations omitted).

The "at peace" requirement derives from the Neutrality Act of 1794. The Neutrality Act was passed with language similar to that used by President George Washington in his annual address to the nation a year earlier.[2] According to the Supreme Court in *Wiborg v. United States,* 163 U.S. 632, 647, 16 S.Ct. 1127, 41 L.Ed. 289 (1896), "[t]he statute was undoubtedly designed in general to secure neutrality in wars between two other nations, or between contending parties recognized as belligerents, but its operation is not necessarily dependent on the existence of such state of belligerency." *Id.* at 647, 16 S.Ct. 1127 (internal citations omitted). In *United States v. Three Friends,* 166 U.S. 1, 52, 17 S.Ct. 495, 41 L.Ed. 897 (1897), the Court further explained that "though the principal object of the act was to 'secure the performance of the duty of the United States, under the law of nations, as a neutral nation in respect of foreign powers,' the act is nevertheless an act 'to punish certain offenses against the United States....'" *Id.* at 52, 17 S.Ct. 495, *citing* 13 Op. Atty. Gen. 177, 178 (1869). Further, the act was aimed at "provid[ing]

---

**2.** Neutrality Act, ch. 50, 1 Stat. 381 (1794). On December 3, 1793, President Washington stated: "Where individuals shall ... enter upon military expeditions or enterprises within the jurisdiction of the United States ... these offences cannot receive too early and

close an attention, and require prompt and decisive remedies." President George Washington's Annual Address (December 3, 1793), *quoted in Wiborg v. United States,* 163 U.S. 632, 647, 16 S.Ct. 1127, 41 L.Ed. 289 (1896) (citation omitted).

a comprehensive code in prevention of acts by individuals within our jurisdiction inconsistent with our own authority, as well as hostile to friendly powers." *Id.* at 53, 17 S.Ct. 495.

The *Terrell* case notes that "[t]here is no law on the meaning of the term 'at peace'". *See Terrell,* 731 F.Supp. at 475. This may explain how Defendant Chhun and the Government arrive at different interpretations of its meaning. Defendant Chhun urges the Court to follow the *Terrell* case in adopting a modern conception of "at peace". The Government directs the Court to adopt the original meaning of "at peace." The Court considers each interpretation in turn.

In *Terrell,* the court addressed the "at peace" requirement in light of "these modern times of covert activities and undeclared warfare." *Terrell,* 731 F.Supp. at 476. Since it could find no definition of "at peace," the court analyzed whether the United States was "at peace" with Nicaragua by asking whether the United States acted with "neutrality" toward the Contras and Sandinista government. *Id.* at 476–77. The court utilized an early Supreme Court definition of "neutrality" as "impartiality of conduct towards both parties." *Id.* at 475, *citing Three Friends,* 166 U.S. at 52, 17 S.Ct. 495. Because the court found the government to provide support to the Contras in its military operations against Nicaragua, the court held that the United States did not act with impartiality and therefore was not "at peace" with Nicaragua. *Terrell,* 731 F.Supp. at 477.

Based on *Terrell,* Defendant Chhun argues that "analysis whether the United States is 'at peace' with a foreign country ... cannot be resolved simply on the basis of whether there has been a formal declaration of war...." (Def.'s Mot. 3.) While stating that "the United States was not engaged in a covert war against the sitting government of Cambodia," Defendant

Chhun contends that there is sufficient evidence of human rights abuses by Cambodia, and United States' actions in opposition and condemnation of Cambodia, to find the two nations were not "at peace" during the time charged in the indictment. (*Id.* at 4–16.)

On the other hand, the Government argues that the original meaning of "at peace" is a "state of affairs that exists between two countries where neither has declared war on the other." (Gov.'s Mot. 12.) The Government points to two cases, *United States v. Burr,* 25 F. Cas. 201 (C.C.D.Va.1807) (No. 14694A) and *United States v. Smith,* 27 F. Cas. 1192 (C.C.D.N.Y.1806) (No. 16,342), as authority. In *Burr,* a decision authored by Chief Justice Marshall while sitting by designation on the circuit court, Aaron Burr was charged with a military expedition against Spain after Spain's invasion of United States' territory. The *Burr* decision contrasted a state of peace with a state of war. The court ultimately held that the two nations remained "at peace" since the United States' government had not determined that Spain's invasion was an act of war nor decided to take any action against Spain. The court reasoned that only the government can make such "an election" to act against a foreign nation. *Burr,* 25 F. Cas. at 201. In *Smith,* another case involving United States–Spain relations, the court stressed that only Congress may decide when the United States is no longer "at peace" with a foreign nation because Article I, section 8 of the United States Constitution gives it exclusive power to declare war. *Smith,* 27 F. Cas. at 1231–32.

On this basis, the Government argues that this Court should interpret "at peace" as the absence of "state-declared warfare." In addressing *Terrell,* the Government notes that the statute's language has not

been changed to reflect the "modern political realities of war." (Gov. Opp'n 16.) Further, the Government emphasizes that Congress's purpose in enacting the statute was to "prevent private citizens from interfering in foreign policy matters that were and are the exclusive domain of the government." (Gov. Opp'n 17.)

As the "at peace" requirement is contained in a statute, its meaning is a matter of statutory interpretation. When interpreting a statute, the Court must "look first to the plain language of the statute, construing the provisions of the entire law, including its object and policy, to ascertain the intent of Congress." *United States v. Mohrbacher,* 182 F.3d 1041, 1048 (9th Cir.1999) (internal quotation and citation omitted). Where a statutory term is not defined in the statute, a court should give the term its ordinary meaning. *Id.* (internal quotation and citation omitted).

Although 18 U.S.C. § 956(b) and 18 U.S.C. § 960 do not define the term "at peace," the statute's purpose suggests a narrow reading of the meaning of "at peace." In addition to securing neutrality in conflicts between other nations, the Neutrality Act aimed to prevent the interference of private individuals in the government's foreign policy decisions by criminalizing certain conduct against foreign nations. Otherwise, the United States could be "driven into war by the licentious behavior of some individuals." *See* Jules Lobel, *The Rise and Decline of the Neutrality Act: Sovereignty and Congressional War Powers in United States Foreign Policy,* 24 Harv. Int'l L.J. 31 (1983) (quoting a statement from Congressional debate on the Neutrality Act).

The initiation of a military intervention or provocative acts by a private individual against a friendly nation could lead to war against the United States. The Neutrality Act provided the government with a means to avoid an international incident by allowing for prosecution of those individuals. However, the "at peace" requirement did not recognize the need for such prosecutions when one acts against nations with whom the United States was already at war.

On the basis of the statute's purpose and the term's ordinary meaning, the Court concludes that the term "at peace" refers to the relationship between the United States and a foreign country when there is no war, whether declared or undeclared. This means that the United States is not "at peace" when involved in a declared war or active military operations against a foreign nation. The implication is that the prosecution must prove to a jury the absence of a declared war or active military operations between the United States and Cambodia in order to carry its burden on the "at peace" requirement.

Defendant Chhun's position seems to ask the Court to find that the United States is not "at peace" with a foreign nation that it condemns or opposes even if it takes no military action against that country. While relying on *Terrell,* Defendants' position actually goes beyond the *Terrell* holding. The court in *Terrell* found that the United States was not "at peace" with Nicaragua where the government was supporting the covert military operation of the Contras against the Nicaraguan government. *Terrell,* 731 F.Supp. at 476. Defendant Chhun's argument is that the United States' opposition to the Cambodian government's conduct is sufficient to show the two nations were not "at peace." This interpretation lacks a basis in the statute's purpose or the term's ordinary meaning.

The Government contends that the "at peace" requirement should be limited to the absence of declared war. The Court

also does not find that definition to comport with the statute's purpose nor with the ordinary meaning of the term "at peace." Any military intervention against a foreign nation, whether declared or undeclared, indicates a state of affairs where the United States is not "at peace" with that nation. Further, Article I, section 8 of the U.S. Constitution established that Congress alone could make a declaration of war. U.S. Const. Art. I, § 8. This language existed at the passage of the Neutrality Act. Yet in the Act, the drafters did not refer to Congress's enumerated power to declare war, but rather, included the "at peace" requirement. This suggests that the drafters intended the "at peace" requirement to incorporate the absence of war whether declared or undeclared.

■ Finally, the Court notes that Defendant Chhun sought to raise a void-for-vagueness challenge to the "at peace" requirement and have the challenge considered in conjunction with this motion. "A statute may be void for vagueness if it fails to give adequate notice to people of ordinary intelligence concerning the conduct it proscribes." *United States v. Gilbert*, 813 F.2d 1523, 1530 (9th Cir.1987). Based on the forgoing discussion, the Court finds no vagueness because people of ordinary intelligence understand "at peace" to mean the absence of war. See *United States v. Elliott*, 266 F.Supp. 318, 322 (S.D.N.Y. 1967) (holding that the words "at peace" are not unconstitutionally vague).

Both parties raise arguments in connection to this motion regarding the admission of evidence at trial on the "at peace" requirement. The Court considers any limitations to such evidence as it pertains to the factual issue whether the United States was "at peace" with Cambodia in ruling on the Government's Motion to Preclude Admission of Evidence Regarding Political Situation in Cambodia.

## III. CONCLUSION

For the forgoing reasons, the Court denies the motion.

IT IS SO ORDERED.