**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
            *Plaintiff-Appellee*,

v.

YASITH CHHUN,
            *Defendant-Appellant*.

No. 10-50296

D.C. No.
2:05-cr-00519-DDP-1

OPINION

Appeal from the United States District Court
for the Central District of California
Dean D. Pregerson, District Judge, Presiding

Argued and Submitted
November 4, 2013—Pasadena, California

Filed March 11, 2014

Before: Diarmuid F. O'Scannlain, Susan P. Graber,
and Carlos T. Bea, Circuit Judges.

Opinion by Judge Bea

# SUMMARY[*]

## Criminal Law

The panel affirmed a defendant's convictions and sentence for violating 18 U.S.C. § 956(a) (conspiracy to commit murder in a foreign country), 18 U.S.C. § 956(b) (conspiracy to damage or destroy property in a foreign country), and 18 U.S.C. § 960 (conspiracy to launch a weapon of mass destruction outside the U.S.), arising from his conspiring, while in the United States, to lead a private army against the government of Cambodia and to overthrow its Prime Minister.

The panel held that § 956(a), which was enacted as part of the Antiterrorism and Effective Death Penalty Act of 1996, is not ambiguous. The panel therefore rejected the defendant's contentions that because he was not involved in terrorist activities, § 956(a) does not apply to him, and that the statute is void for vagueness.

The panel held that there was sufficient evidence for the jury to conclude that the defendant had the intent to commit murder.

The panel held that the "at peace" element of §§ 956(b) and 960 was correctly submitted to the jury, and that the district court did not plainly err in its jury instruction defining that element.

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

The panel held that the district court's failure to instruct the jury to find an overt act that occurred within the five-year limitations period did not affect the defendant's substantial rights.

The panel concluded that the district court did not commit plain error in sentencing the defendant to life in prison, and that the sentence was not substantively unreasonable.

**COUNSEL**

Richard M. Callahan, Jr. (argued), Law Offices of Richard M. Callahan, Jr., Pasadena, California, for Defendant-Appellant.

Jean-Claude André (argued), United States Department of Justice, Office of the United States Attorney, Los Angeles, California, for Plaintiff-Appellee.

**OPINION**

BEA, Circuit Judge:

Yasith Chhun appeals his convictions for violations of 18 U.S.C. §§ 956(a), 956(b), and 960, and appeals his life sentence. While within the United States, Chhun conspired to lead a private army against the government of Cambodia and to overthrow its Prime Minister, Hun Sen. We affirm Chhun's convictions and sentence.

## I.  *Factual Summary*

In 1975, the Khmer Rouge, a communist party led by Pol Pot, rose to power in Cambodia. Under Pol Pot's regime, millions of Cambodians died from execution, disease, and starvation, and were buried in mass graves known as "killing fields." One of Pol Pot's field commanders was Hun Sen.

In 1979, Vietnamese communists occupied Cambodia, staying until 1989. During this period, Hun Sen and other former Khmer Rouge members were designated by the Vietnamese as surrogate leaders of Cambodia. Hun Sen, as a member of the Cambodian People's Party ("CPP"), became Prime Minister of Cambodia in 1989. After losing the 1993 election, Hun Sen threatened military action and was given a share of the Prime Minister position, along with Prince Norodom Ranariddh. In 1997, Hun Sen led a *coup d'état* against Prince Ranariddh and took sole possession of the Prime Minister position.

In 1998, both Houses of the United States Congress issued resolutions condemning Hun Sen's coup. H.R. Res. 533, 105th Cong. (1998); S. Res. 309, 105th Cong. (1998).

These resolutions supported prosecuting Hun Sen in the International Criminal Court for "war crimes, crimes against humanity, and genocide." *Id.*

Yasith Chhun, a tax preparer in the United States who was born in Cambodia and emigrated to the United States as a child, also objected to Hun Sen's 1997 seizure of power. In October, 1998, Chhun traveled to the border between Thailand and Cambodia to meet with opponents of the CPP who believed that Hun Sen should be removed from power. Those at the meeting formed the Cambodian Freedom Fighters ("CFF"), with Chhun as the party's president. The purpose of the CFF was to remove Hun Sen from power and become the controlling party in Cambodia.

Following the formation of the CFF, Chhun held multiple meetings with other members of the CFF in Long Beach, California to plan Hun Sen's overthrow. They called this plan "Operation Volcano." It involved a military strike against government targets in Cambodia's capital, Phnom Phenh. Chhun informed the other CFF members that, although loss of life was inevitable, the number of casualties would be low because the Cambodian people would turn against Hun Sen and support the CFF.

In 1999, members of the CFF committed a series of small-scale attacks—which they called "popcorn attacks"—on Cambodian establishments. In one popcorn attack in February, 1999, a CFF operative threw a grenade into a bar, injuring several patrons and killing at least one.

Meanwhile, Chhun continued to raise funds and supplies in the United States. On May 31, 2000, Chhun and several CFF members boarded a plane in Los Angeles, California

bound for Thailand. While in Thailand, Chhun continued to plan Operation Volcano from a house near the Thailand/Cambodia border.

Operation Volcano began on November 24, 2000. CFF soldiers attacked government buildings protected by government forces in Phnom Phenh. Throughout the day, CFF soldiers and government soldiers exchanged gunfire. Finally, the government sent in tanks, and the CFF forces retreated. Several CFF soldiers were killed in the gunfire that day. Additionally, one civilian bystander was killed. After this failed overthrow, Chhun returned to the United States and resumed his life as a tax preparer.

More than four years later, on May 31, 2005, the United States government indicted Chhun for violating 18 U.S.C. § 956(a) (Count One, conspiracy to commit murder in a foreign country), § 956(b) (Count Two, conspiracy to damage or destroy property in a foreign country), § 960 (Count Three, expedition against a friendly nation), and § 2332a(b) (Count Four, conspiracy to launch a weapon of mass destruction outside the U.S.).[1]

Before trial, Chhun filed motions to dismiss Counts One, Two, and Three on the grounds that the United States and Cambodia were not "at peace," the statutes were void for vagueness, and that the indictment failed to state an offense, all of which the district court denied. At trial, the jury convicted Chhun of all four Counts. At sentencing, the Probation Office calculated Chhun's Guidelines-based

---

[1] Chhun does not appeal his 18 U.S.C. § 2332a(b) conviction of conspiracy to launch a weapon of mass destruction.

sentencing range as "life."**²**  Chhun did not dispute that this was the correct Guidelines range.  The court sentenced Chhun to life in prison, noting in particular that Chhun had the intent to kill and also that at least two innocent people were in fact killed.

Chhun appeals his convictions of Counts One, Two, and Three, as well as his life sentence.  He does not appeal his conviction of Count Four.

## II. *18 U.S.C. § 956(a) Is Not Ambiguous, and Therefore Chhun Was Correctly Convicted Under It*

Count One charged Chhun with conspiring, while within the United States, to commit murder in a foreign country in violation of 18 U.S.C. § 956(a).  That statute was enacted as part of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA").  110 Stat. 1214, 1294–95 (1996).  Chhun first argues that § 956(a) does not have a plain meaning because the statute's purpose, though not its text, relates only to terrorism.[3]  Chhun infers § 956(a)'s "antiterrorism"

---

[2] The PSR calculated an offense level of 48 for Chhun's four convictions, and a criminal history level of I.  This led to a sentencing guidelines range of "life."

[3] The statute's plain text itself is not ambiguous, nor does Chhun argue that it is ambiguous.  The relevant portion of the statute states:

> Whoever, within the jurisdiction of the United States, conspires with one or more other persons, regardless of where such other person or persons are located, to commit at any place outside the United States an act that would constitute the offense of murder, kidnapping, or maiming if committed in the special maritime and territorial jurisdiction of the United States

purpose from its enactment as a part of AEDPA. Chhun argues that, in response to the 1993 World Trade Center bombing and the 1995 Oklahoma City bombing, Congress enacted AEDPA to target terrorism cases. A conspiracy to overthrow the Cambodian government, Chhun argues, is not "terrorism" and does not relate to the safety or security of Americans or American interests. Thus, even though the text of the statute is clear, he argues, the purpose of the statute limits its scope. Chhun next asserts that it would violate the statutory canon against absurdities[4] for the court to apply the plain text of the statute. The plain meaning of the statute prohibits any conspiracy formed in the United States to commit murder anywhere in the world for any reason, which Chhun argues would be absurd, since its purpose is to target only terrorist activities. Because Chhun was not involved in terrorist activities, he concludes, § 956(a) does not apply to him, fails to charge an indictable offense, and should have been dismissed.

We review *de novo* a district court's decision not to dismiss an indictment based on an interpretation of a federal statute. *United States v. Wilbur*, 674 F.3d 1160, 1170 (9th Cir. 2012).

---

> shall, if any of the conspirators commits an act within the jurisdiction of the United States to effect any object of the conspiracy, be punished as provided in subsection (a)(2).

18 U.S.C. § 956(a)(1).

[4] *See Avendano-Ramirez v. Ashcroft*, 365 F.3d 813, 816 (9th Cir. 2004) ("[W]e do not limit ourselves to the apparent plain meaning of a statute, if doing so leads to absurd or impracticable consequences.") (internal quotation marks omitted).

"In interpreting a statute, we must examine its language. If 'the statute is clear and unambiguous, that is the end of the matter.'" *United States v. Bahe*, 201 F.3d 1124, 1128 (9th Cir. 2000) (quoting *Sullivan v. Stroop*, 496 U.S. 478, 482 (1990)) (citation omitted). In this case, there is no ambiguity in the text. The statute prohibits conspiring, while within the jurisdiction of the United States, to commit at any place outside the United States an act that would constitute the offense of murder if committed in the United States' maritime and territorial jurisdiction. Section 956(a) does not limit its application to "terrorist" acts, or to acts that affect United States citizens or interests. The statute applies to "[w]hoever . . . conspires with one or more other persons . . . to commit at any place outside the United States an act that would constitute the offense of murder." 18 U.S.C. § 956(a)(1). Where an unambiguous statutory text exists, it is irrelevant whether Congress did not envision the application in question. "As we have said before, the fact that a statute can be applied in situations not expressly anticipated by Congress does not demonstrate ambiguity. It demonstrates breadth." *Pa. Dep't of Corr. v. Yeskey*, 524 U.S. 206, 212 (1998) (internal quotation marks omitted); *see also Barr v. United States*, 324 U.S. 83, 90 (1945) ("[I]f Congress has made a choice of language which fairly brings a given situation within a statute, it is unimportant that the particular application may not have been contemplated by the legislators.").

Moreover, it is not absurd for Congress to want to prevent people within the borders of the United States from plotting to commit murder in a foreign country. That is so even though much of the impetus behind this part of AEDPA was to fight terrorism in the United States. *See Pittston Coal Grp. v. Sebben*, 488 U.S. 105, 115 (1988) ("It is not the law that a

statute can have no effects which are not explicitly mentioned in its legislative history . . . .”). Therefore, we hold that 18 U.S.C. § 956(a) does apply to Chhun's conduct.

Chhun also argues that § 956(a) is void for vagueness because a reasonable person in Chhun's position would not have been able to know that his conduct would be prohibited under the statute, due to the statute's antiterrorism purpose. We review *de novo* whether a statute is void for vagueness. *United States v. Shetler*, 665 F.3d 1150, 1164 (9th Cir. 2011). Under Ninth Circuit precedent, “[a] criminal statute is void for vagueness if it is not sufficiently clear to provide guidance to citizens concerning how they can avoid violating it.” *United States v. Harris*, 705 F.3d 929, 932 (9th Cir. 2013) (internal quotation marks omitted). Chhun's void for vagueness argument fails because, as discussed above, the statute's text is clear and unambiguous. A reasonable person would have no difficulty recognizing what conduct § 956(a) prohibits.

Therefore, we affirm the district court's denial of Chhun's motion to dismiss Count One.

## III.     *There Was Sufficient Evidence for a Fact-Finder To Conclude That Chhun Had the Intent To Commit Murder*

After Chhun was convicted by a jury, he moved the district court for a judgment of acquittal for his conviction of 18 U.S.C. § 956(a), or, in the alternative, for a new trial. The ground for this motion was insufficiency of the evidence to prove that Chhun had the intent to murder when he conspired. The district court denied his motion. Chhun argues on appeal that there was insufficient evidence to prove that he had the

requisite intent to conspire to commit murder. Under the United States' maritime and territorial jurisdiction, "murder" is defined as "the unlawful killing of a human being with malice aforethought." 18 U.S.C. § 1111. In this case, the district court defined "[t]o kill with malice aforethought" in its tenth jury instruction as "to kill deliberately and intentionally."[5] Chhun argues that he intended to arrest, not kill, Hun Sen, and that in his plans for Operation Volcano he always tried to minimize casualties. Chhun argues that the evidence may prove a recklessness towards human life, and perhaps even knowledge that some people would die, but does not prove intent to kill.

We review *de novo* a district court's denial of a motion for a judgment of acquittal. *United States v. Moses*, 496 F.3d 984, 987 (9th Cir. 2007). We review *de novo* claims of insufficient evidence. *United States v. Sullivan*, 522 F.3d 967, 974 (9th Cir. 2008) (per curiam). Evidence is sufficient to support a conviction if, "viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). We review a district court's denial of a motion for a new trial under the "abuse of discretion" standard. *Moses*, 496 F.3d at 987.

---

[5] The government had sought a definition of "malice aforethought" that included "recklessly with extreme disregard for human life," but after lengthy consideration the district court found that it was not possible to conspire to commit a reckless crime, and therefore in its jury instruction defined the mens rea the jury had to find as "deliberately and intentionally."

A conspiracy requires "(1) an agreement to engage in criminal activity, (2) one or more overt acts taken to implement the agreement, and (3) the requisite intent to commit the substantive crime." *Sullivan*, 522 F.3d at 976 (internal quotation marks omitted). Chhun contends that there was insufficient evidence for the government to prove the third prong, that he had the intent to commit the substantive crime of murder. Chhun is correct that, under the jury instructions given in his case, his intent to murder had to be proved, and that mere recklessness or knowledge would not satisfy this burden. There is, however, sufficient evidence, viewed in the light most favorable to the government, to find that Chhun had the requisite mens rea of "intent to murder." In August, 2000, Chhun wrote to the other CFF officials that his enemies "are luck[]y to survive at this moment, but however they can not escape from our volcano. We have to send them to . . . hell in the near future." The government also points to a handwritten military plan for Operation Volcano that instructed its reader to "look for surviving enem[ies] very carefully . . . [and] take prisoners or shoot to kill on the spot." Richard Kim, a CFF military commander, testified that Chhun sent this document to him.

There was sufficient evidence in the record to allow the jury to conclude that Chhun had the intent to murder his enemies when he conspired to overthrow Hun Sen. Therefore, the district court did not abuse its discretion in denying Chhun's motion for judgment of acquittal and new trial.

**IV.** ***The "at Peace" Element of 18 U.S.C. §§ 956(b) and 960 Was Correctly Submitted to the Jury To Decide, and the District Court Did Not Plainly Err in Its Jury Instruction Defining That Element***

Count Two charged Chhun with violating 18 U.S.C. § 956(b), and Count Three charged him with violating the Neutrality Act, 18 U.S.C. § 960.[6] Both crimes include the element that the United States and the foreign country in question be "at peace."

---

[6] Section 956(b) provides:

> Whoever, within the jurisdiction of the United States, conspires with one or more persons, regardless of where such other person or persons are located, to damage or destroy specific property situated within a foreign country and belonging to a foreign government or to any political subdivision thereof with which the United States is at peace . . . shall, if any of the conspirators commits an act within the jurisdiction of the United States to effect any object of the conspiracy, be imprisoned not more than 25 years.

Section 960 provides:

> Whoever, within the United States, knowingly begins or sets on foot or provides or prepares a means for or furnishes the money for, or takes part in, any military or naval expedition or enterprise to be carried on from thence against the territory or dominion of any foreign prince or state, or of any colony, district, or people with whom the United States is at peace, shall be fined under this title or imprisoned not more than three years, or both.

Chhun filed a motion in the district court to dismiss Counts Two and Three on the ground that the United States was not "at peace" with Cambodia. The district court denied the motion, finding that "at peace" was an element of the crime and that all elements of the crime must be submitted to a jury. Chhun appeals, arguing that "at peace" was a question of law that the district court and not the jury should decide or, in the alternative, that Counts Two and Three should be reversed because the district court defined "at peace" incorrectly in its jury instruction.

**A.** ***The District Court Was Correct to Submit to the Jury the Question of Whether the United States and Cambodia were "at Peace"***

We review *de novo* a district court's decision not to dismiss an indictment based on an interpretation of a federal statute. *Wilbur*, 674 F.3d at 1170.

Chhun argues that the "at peace" element in Counts Two and Three is a question of law and not of the sufficiency of proof. Chhun argues that, as a matter of law, the United States and Cambodia were not at peace during the charged period. He cites several pieces of evidence to support this conclusion. First, in July, 1997, soon after Hun Sen took power in Cambodia, President Clinton wrote a letter to Congress telling them that he had ordered the State Department to set up a staging area in Thailand for possible evacuations from Cambodia. H.R. Doc. No. 105-104 (1997). Congress then cut off funding to the Cambodian government, except for humanitarian programs. 111 Stat. 2386, 2390–91 (1997). In 1998, both the House and the Senate passed resolutions condemning Hun Sen's "*coup d'état*" and supporting prosecuting Hun Sen for human rights violations.

H.R. Res. 533, 105th Cong. (1998); S. Res. 309, 105th Cong. (1998).

The Supreme Court has held that, in criminal cases, "a jury [must] find [the defendant] guilty of all the elements of the crime with which he is charged." *United States v. Gaudin*, 515 U.S. 506, 511 (1995). Here, the parties both acknowledge that "at peace" is an element of the crime. Therefore, under *Gaudin*, the district court was correct in deciding that the "at peace" element had to be presented to the jury, notwithstanding the facts that Chhun cites.

**B.** *The District Court Did Not Plainly Err in Its Jury Instruction Defining the Statutory Term "at Peace"*

Chhun's alternative argument is that the lower court incorrectly defined "at peace" in its jury charge. The parties disagree over whether Chhun preserved his objection to the district court's definition of "at peace." If Chhun preserved his objection, then we review *de novo*, *United States v. O'Donnell*, 608 F.3d 546, 548 (9th Cir. 2010); if Chhun did not preserve his objection, then we review for plain error, *United States v. Hofus*, 598 F.3d 1171, 1175 (9th Cir. 2010).

Federal Rule of Criminal Procedure 30(d) defines the correct method for objecting to jury instructions:

> A party who objects to any portion of the instructions or to a failure to give a requested instruction must inform the court of the specific objection and the grounds for the objection before the jury retires to deliberate. . . . Failure to object in accordance with this rule [results in plain error review].

Chhun did not state his grounds for objecting to the jury instructions before the district court. There is, however, an exception to "the requirement of a formal, timely, and distinctly stated objection when a proper objection would be a pointless formality." *United States v. Klinger*, 128 F.3d 705, 711 (9th Cir. 1997) (internal quotation marks omitted). This exception applies when a party satisfies a three-pronged test to determine whether an objection to a jury instruction would have been a "pointless formality":

> (1) throughout the trial the party argued the disputed matter with the court; (2) it is clear from the record that the court knew the party's grounds for disagreement with the instruction; and (3) the party proposed an alternate instruction.

*Id.* (internal quotation marks omitted). Chhun, however, never presented an alternative jury instruction, and so, at a minimum, fails the third prong of *Klinger*. Therefore, we review the district court's jury instruction for plain error.

The jury instruction defining "at peace" tracked the text of one of the district court's opinions in the case:

> "At peace," as that term is used in these instructions, means any time when the United States and another foreign country are not at war with one another or engaged in open and notorious military conflict with one another. Military conflict is open and notorious if it would have been known to an ordinary person in the United States who keeps up with world events.

*See United States v. Chhun*, No. CR 05-00519ADDP, 2008 WL 793386, at *2 (C.D. Cal. Mar. 20, 2008) (unpublished). Even on appeal, Chhun does not articulate an alternative definition for the term "at peace." The district court below tried to articulate Chhun's position for him: "Defendant Chhun's position seems to ask the Court to find that the United States is not 'at peace' with a foreign nation that it condemns or opposes even if it takes no military action against that country." *United States v. Chhun*, 513 F. Supp. 2d 1179, 1184 (C.D. Cal. 2007). Even assuming, for the purposes of our plain error analysis, that the district court accurately articulated Chhun's alternative definition of "at peace," we conclude that the district court did not plainly err in denying Chhun's alternative jury instruction.

The term "at peace" has up to this point been defined only by district courts. In *United States v. Terrell*, the Southern District of Florida considered whether the Neutrality Act (18 U.S.C. § 960) applied to defendants who were charged with running guns to the Contra rebels in their war against the Sandinista government of Nicaragua. 731 F. Supp. 473 (S.D. Fla. 1989). The district court focused on whether the United States was "at peace" with Nicaragua between October, 1984 and March, 1985, during which period the CIA was covertly providing financial aid to the Contras without Congress's approval. *Id.* at 474. The district court held that "at peace" refers to the absence of any hostilities between the United States and a foreign country, declared or undeclared, overt or covert, and concluded that the United States and Nicaragua were not at peace during the relevant period. *Id.* at 475. The court therefore granted the defendants' motions to dismiss those counts that included the "at peace" element. *Id.* at 477.

In *United States v. Jack*, the Eastern District of California considered whether the Neutrality Act applied to defendants who were charged with shipping weapons to Laos to overthrow the government. 257 F.R.D. 221 (E.D. Cal. 2009). The defendants filed a motion to compel the government to produce documents regarding, among other things, covert military operations against Laos. The defendants contended that the evidence would demonstrate their lack of knowledge that the United States was "at peace" with Laos. *Id.* at 223. The court concluded that "at peace" meant an absence of overt as well as covert military operations, fearing that otherwise the statute might not give fair notice and thereby be void for vagueness and violate due process. *Id.* at 231–32. Therefore, the court granted the defendants' motion to compel discovery of evidence relating to overt or covert military planning or operations as to Laos during the relevant period. *Id.*

Chhun cites these two cases in support of his contention that the United States may cease to be "at peace" with another nation even in the absence of military conflict if the relationship between the two countries is "distant and tense." Those two cases, however, both involved actual *military* conflict between the United States and the foreign country. No case has held that the United States can cease to be "at peace" with another nation with the complete absence of some kind of military operation.

Indeed, the history of the Neutrality Act (18 U.S.C. § 960) confirms that the United States and another nation remain "at peace" even when diplomatically they are "distant and tense," so long as there are no military operations between them. The Neutrality Act was passed in 1794 in response to attempts by French diplomats to use the United States as a

staging ground from which to prepare expeditions against Great Britain. The United States wanted to prevent individuals from forcing it into a state of war with Britain. Jules Lobel, *The Rise and Decline of the Neutrality Act: Sovereignty and Congressional War Powers in United States Foreign Policy*, 24 Harv. Int'l L.J. 1, 24–25 & n.134 (1983). Thus, at the time the Neutrality Act was passed, "at peace" described the state of relations between the United States and Britain. "Distant and tense" would be an apt way to describe the diplomatic relationship between Britain and the United States in 1793, a decade after the United States and Britain had signed the Treaty of Paris and in the midst of a war between Britain and the United States' ally France. Lobel, *supra*, at 11–15. Nevertheless, despite this diplomatic tension, there were no active military operations between Britain and the United States in 1794, and the "at peace" phrasing of the Neutrality Act would have been understood to describe that diplomatic relationship.

We therefore hold that the district court did not plainly err in its jury instruction when it defined "at peace" as the absence of "war" or "military conflict," and thereby required "military conflict" to end the state of "peace" for the purposes of 18 U.S.C. §§ 956(b) and 960.[7]

---

[7] Chhun also argues that the jury instruction was erroneous because, by requiring "open and notorious" military conflict to end a state of peace, it excluded *covert* military operations. We need not decide today whether the district court erred in requiring *overt* military conflict to render the United States and a foreign country not "at peace" for the purposes of 18 U.S.C §§ 956(b) and 960. Any possible error would be harmless to Chhun, because he acknowledges that "the United States was not engaged in a covert war against the sitting government of Cambodia."

**V.** ***The District Court's Failure To Instruct the Jury To Find an Overt Act That Occurred Within the Five-Year Limitations Period Did Not Affect Chhun's Substantial Rights***

Chhun argues that the district court should have informed the jury that they must find that at least one overt act supporting each element of the crimes charged in Counts Two[8] and Three[9] occurred within the statutory period. The statutory period commenced on May 31, 2000, because Chhun was indicted on May 31, 2005. Chhun argues that none of the charged overt acts occurred both within the statutory period and within the United States, as required by 18 U.S.C. §§ 956(b) and 960.

Chhun failed to object to the absence of a jury instruction that the jurors must find an overt act in furtherance of the conspiracy within the five-year limitations period, and so the issue is reviewed for "plain error." *United States v. Fuchs*, 218 F.3d 957, 961 (9th Cir. 2000). Plain error review consists of three prongs: (1) there is error; (2) the error is plain; and (3) the plain error affects substantial rights. *Johnson v. United States*, 520 U.S. 461, 467 (1997). If all three of these prongs are met, then the court "may exercise [its] discretion and reverse the defendant['s] convictions if permitting the convictions to stand would result in a miscarriage of justice." *Fuchs*, 218 F.3d at 963. The government acknowledges that the failure to instruct the jury

---

[8] Count Two charged Chhun with conspiracy to damage or destroy property in a foreign country in violation of 18 U.S.C. § 956(b).

[9] Count Three charged Chhun with expedition against a friendly nation in violation of 18 U.S.C. § 960.

on the statute of limitations issue satisfies the first two prongs of this test.  Therefore, the remaining issues are whether the plain error affected Chhun's substantial rights and, if so, whether this court should exercise its discretion to reverse the defendant's convictions.

A plain error affects a party's substantial rights when it "affects the outcome of the proceedings." *Id.* at 962 (internal quotation marks and brackets omitted).  Chhun argues that the error affected the outcome of the trial because none of the overt acts underlying the conspiracy occurred both within the statutory period and within the United States.

We have stated that a jury must "find that an overt act in furtherance of the conspiracy occurred within the statute of limitations." *Id.* at 961.  The "only function" of proof of an overt act, however, "is to demonstrate that the conspiracy is operative." *United States v. Andreen*, 628 F.2d 1236, 1248 (9th Cir. 1980) (Kennedy, J.).  The elements of a conspiracy can be satisfied even if not all of the conspiracy elements occurred within the limitations period.  As we have said, "[a]ctions that cannot be prosecuted because of the statute of limitations can be considered as part of an ongoing conspiracy so long as one overt act in furtherance of the conspiracy occurred during the limitations period." *Wilbur*, 674 F.3d at 1176.

Here, there is ample evidence of overt acts within the statutory period that prove Chhun's conspiracy to overthrow Hun Sen.  Overt Act Number Seven of the Indictment alleges: "On or about May 31, 2000, defendant YASITH CHHUN and other co-conspirators . . . traveled from Los Angeles, California to Bangkok, Thailand in order to set up a base

camp to coordinate the attempted overthrow."[10]  Overt Act
Number Eight alleges: "Between July 2000 and November
2000, at defendant YASITH CHHUN's direction, co-
conspirators who were members of CFF purchased
approximately $16,000 of radio equipment from Ham Radio
Outlet in Anaheim, California in order to communicate
during 'Operation Volcano.'"   Overt Act Number Nine
alleges: "On or about November 6, 2000, at defendant
YASITH CHHUN's directions, co-conspirators who were
members of CFF transported the radio equipment from Los
Angeles, California to Bangkok, Thailand so that the
equipment could be used to carry out 'Operation Volcano.'"
Chhun does not dispute that the bulk of activity of the
conspiracy occurred within the statutory period, albeit outside
the United States.

Moreover, Chhun's case is not one in which the court
should "exercise [its] discretion and reverse the defendant['s]
convictions if permitting the convictions to stand would result
in a miscarriage of justice." *Fuchs*, 218 F.3d at 963.  In
*Fuchs*, the court decided to exercise its discretion to reverse
the defendants' convictions because the evidence supporting

---

[10] Moreover, Overt Act Number 7 is an example of an overt act in
furtherance of the conspiracy that occurred within the United States,
contrary to Chhun's contention that there was none.  Chhun boarded the
plane in the United States on May 31, 2000, exactly five years before he
was indicted.  Boarding a plane with his co-conspirators to travel to the
site of the intended overthrow was an overt act committed within the
United States within the statutory period. *See United States v. Tawab*,
984 F.2d 1533, 1534 (9th Cir. 1993) (per curiam) (holding that an
indictment returned on February 15, 1991 was not barred by a five-year
limitation statute where the offense occurred on February 15, 1986).
Thus, there is one overt act that occurred within the statutory period within
the United States that supports a conspiracy charge.

their guilt "was not overwhelming," as there were very few overt acts committed within the statutory period. *Id.* (internal quotation marks omitted). When the evidence is "overwhelming," on the other hand, courts have not exercised their discretion to reverse defendants' convictions. *See United States v. Bear*, 439 F.3d 565, 570 (9th Cir. 2006) ("Allowing the conviction to stand does not have those serious effects on judicial proceedings when the evidence against the defendant on the issue erroneously explained to the jury is 'overwhelming'" (quoting *Fuchs*, 218 F.3d at 963)). Here, as shown above, the evidence of the conspiracy was overwhelming and, indeed, essentially uncontroverted at trial.

Therefore, we dismiss Chhun's challenge to the district court's jury instructions because any error in failing to instruct the jury to find an overt act within the statutory period did not affect Chhun's substantial rights.

## VI.    *The Court Did Not Commit Error in Sentencing Chhun to Life in Prison*

Chhun challenges his life sentence, arguing that the district court did not adequately consider the 18 U.S.C. § 3553(a) factors and did not adequately explain the sentence. Chhun and the government both agree that Chhun did not object at the sentencing hearing that the district court erred in applying the § 3553(a) factors, and so we review for "plain error." *United States v. Joseph*, 716 F.3d 1273, 1276 (9th Cir. 2013).

The Supreme Court has said that "failing to consider the [18 U.S.C.] § 3553(a) factors" and not "adequately explain[ing] the chosen sentence" during sentencing are

"significant procedural error[s]." *Gall v. United States*, 552 U.S. 38, 51 (2007). The Supreme Court has also stated, however, that "when a judge decides simply to apply the Guidelines to a particular case, doing so will not necessarily require lengthy explanation." *Rita v. United States*, 551 U.S. 338, 356 (2007). As we have said, "[i]f the record 'makes clear that the sentencing judge listened to each argument' and 'considered the supporting evidence,' the district court's statement of reasons for the sentence, although brief, will be 'legally sufficient.'" *United States v. Sandoval-Orellana*, 714 F.3d 1174, 1181 (9th Cir. 2013) (quoting *Rita*, 551 U.S. at 358).

Chhun argues that the sentencing court did not adequately address three specific issues:

> 1) the fact that the entire prosecution of Mr. Chhun had been politically motivated; 2) the failure of the government to charge any other CFF officials for the failed overthrow of Hun Sen proves that the incident was not believed that serious by the federal government, and the failure to charge others involved in the coup d'état demonstrated sentencing disparity; 3) the failure of the government to take any action against Mr. Chhun until the statute of limitations was about to run proves that he was not considered a future threat.

The sentencing guidelines in this case recommended a sentence of "life." The sentencing judge stated that, in deciding to sentence Chhun to life in prison, he considered the § 3553(a) factors. The sentencing court, moreover, implicitly addressed Chhun's first and third issues—that his

prosecution was politically motivated and that the delay in prosecuting him proves he was not a future threat—by emphasizing the government's prosecutorial discretion and the government's discretion in interacting with other countries. The court also addressed Chhun's second issue—that he was the only CFF official prosecuted—by noting that he was the leader of the movement. Thus, the sentencing transcript suggests that the court specifically addressed Chhun's concerns, addressed the § 3553(a) factors, and explained Chhun's sentence.

Therefore, we conclude that the district court did not commit plain error in sentencing Chhun to life in prison.

## VII.    *Chhun's Sentence Was Not Substantively Unreasonable*

Chhun argues that his sentence was substantively unreasonable because the sentencing court did not adequately consider Chhun's "[n]oble" effort to overthrow a "universally despised despot," it punished him only because his overthrow effort "fail[ed] to succeed," and it punished him for the purpose of "send[ing] a message" to foreign governments.

The substantive reasonableness of a sentence is reviewed for abuse of discretion. *United States v. Blinkinsop*, 606 F.3d 1110, 1116 (9th Cir. 2010). The review must consider the totality of the circumstances, while recognizing that the "'sentencing judge is in a superior position to find facts and judge their import under § 3553(a) in the individual case.'" *Id.* (quoting *Gall*, 552 U.S. at 51).

We find that Chhun's sentence was not substantively unreasonable. The sentencing court gave numerous reasons

to support Chhun's sentence and thereby showed that it did not abuse its discretion in sentencing Chhun.  In addition to those reasons discussed *supra*, in Part VI, the sentencing court also explained that illegal conduct will not be shielded from punishment just because it is "noble."   The court rejected Chhun's pleas for leniency because he caused the deaths of innocent people.  These reasoned justifications for sentencing Chhun to life in prison show that the sentence was not substantively unreasonable.  Therefore, we hold that the district court did not abuse its discretion in sentencing Chhun to life in prison.

## VIII.  *Conclusion*

For the above-stated reasons, we **AFFIRM** Chhun's convictions and sentencing in all respects.